# BRUNSWICK-BALKE COLLENDER CO v. ALONZO HERRICK.

### Sale. Passing title. Mortgage of quarry.

1. Plaintiff advanced A. & C. money with which to open their slate quarry. In consideration thereof A. & C. contracted with plaintiff to manufacture for it all the slate taken from the quarry at certain specified prices, 10% to be applied on the indebtedness and 90% to be paid in cash when the slate was loaded upon the cars boxed for shipment. A. & C. executed a mortgage to secure payment of their debt and performance of their contract. *Held*, that the title to the slate did not pass to the plaintiff until it was so boxed and loaded, although manufactured upon a specific order from it and already paid for, and that the plaintiff could not maintain replevin therefor against a messenger of the court of insolvency, in insolvency proceedings against A. & C.

2. Under a mortgage of a slate quarry, which contemplates the working of the quarry, and the condition of which has not been broken, the title to the slate when quarried is not in the mortgagee.

This was an action in replevin for certain billiard table slates, against the defendant in possession as messenger for the Court of Insolvency in proceedings against Ainsworth & Cole, insolvent debtors. Heard upon the report of a referee at the September term, 1890, Taft J., presiding. Judgment for the plaintiff.

The defendant excepts.

The slates had been manufactured under the contract hereinafter set forth. The referee found that they had been manufactured for the plaintiff upon specific orders from the plaintiff to the defendants; that they had been paid for by the plaintiff upon request from the defendants, accompanied by the statement

that they were ready to ship ; that a portion of them had been boxed ready for shipment, but that none had been loaded onto the cars, being still upon the premises of the defendants.

Cole, of the firm of Ainsworth & Cole, absconded April 19, 1889, leaving the firm insolvent. Soon afterwards the property of the firm, including that involved in this suit, was attached. Still later, proceedings in insolvency were begun, and on May 14, the defendant as messenger, took possession of the estate. On the same day the plaintiff brought this suit.

The contract was as follows :

" This agreement, made this 25th day of March, 1884, between Hiram Ainsworth of the town of Castleton, county of Rutland, and State of Vermont, party of the first part, and the Brunswick-Balke Collender Company, a corporation organized under the laws of the state of Ohio, party of the second part, witnesseth : That whereas party of the first part is owner of a slate quarry situated in the town of Poultney, and is desirous of increasing the products of his quarry, and the party of the second part having use in its business of a large supply of slate for billiard tables, and being desirous of procuring the same, now therefore it is mutually agreed between the parties hereto as follows :

The party of the first part hereby agrees to erect a mill and procure necessary machinery and help for the purpose of developing and working said quarry, and to turn out and deliver to the party of the second part all the billiard slate, or slate suitable and proper for billiard tables, in such size as may be required, and to the extent that the said quarry is capable of producing, which the said party of the first part covenants and agrees shall not be less in quantity than five car loads per month, unless some unavoidable accident, such as the breaking of the machinery, or other like cause, should temporarily prevent the delivery of such an amount, occasionally, and in that event, the party of the first part agrees to make up and deliver to the party of the second part as soon as possible, the quantity of slate sufficient to make up the full quantity of five car loads per month.

The price of the same, delivered on cars at the said town of Castleton, to be twenty-two cents per square foot. In case the market price, or the price at which such slate can be purchased by others, should be lower than the said price of twenty-two cents, then the price which the said party of the second part is to

Collender Co. *v.* Herrick.

pay to the said party of the first part, shall only be a price of rough slate at the quarry, adding cost of finishing in mill and ten per cent profit on the said cost of finishing and cost of putting on cars.

And the party of the second part hereby agrees to loan the party of the first part, to enable him to purchase the necessary machinery and erect the said mill, at such times and in such sums as may be required, a sum of money not to exceed twelve thousand dollars ($12,000), upon which the said party of the second part shall be entitled to charge and receive interest at and after the rate of six per cent per annum, from the date of such advances. And the party of the second part further agrees to take from the party of the first part, at least five car loads of billiard table slate per month, and to pay for the same in the manner hereinafter provided. The party of the first part further agrees to give to the party of the second part, a first mortgage, containing the usual interest and insurance clauses, on all the real property, including his quarry or quarries, and all mills and machinery belonging to the party of the first part, and situate in the said town of Poultney, as security for the sums of money so to be advanced by the party of the second part aforesaid. It is understood by the parties hereto that the following shall be the manner of payment : The party of the second part agrees to pay the party of the first part twenty-two cents per square foot for all the billiard slate to the extent of the capacity of the quarry, on the delivery of the same on the cars at said town of Castleton, excepting always that in the event of the market price of billiard slate being lower than twenty-two cents per square foot, then said party of the second part is only to pay the price to be fixed and determined by the price of rough slate at quarries adding cost of finishing in mill and the ten per cent profit on the cost of finishing and cost of putting on cars, as hereinbefore provided. And it is further agreed that in case of an advance in the market-price of rough slate, caused by or through the advance of price of labor at quarries, that said party of the second part shall only be obliged to pay said advance or additional cost of labor. It is further agreed that all settlements for invoices shall be made once a month, and the party of the first part agrees to allow party of the second part to deduct or retain ten per cent of the price or cost of each and every invoice of slate sold and delivered to the party of the second part, as aforesaid, which sum shall be appropriated by the party of the second part as a part payment of the money advanced to the party of the first part, to

enable him to purchase the necessary machinery and erect the said mill as aforesaid.

Party of the first part agrees that all slate furnished by him under this agreement, shall be of the best quality, rubbed perfectly true, and finished in first-class style, and delivered on cars properly boxed so as to be protected from danger of being chipped or broken at edges in transportation. This agreement to continue in force for the term of five years from the first day of July, 1884.

In witness whereof, the parties hereto have hereunto set their hands and affixed their seals the day and year first above written, to wit, March 25, 1884.

H. AINSWORTH.

The Brunswick-Balke-Collender Company, by

H. W. COLLENDER,

Vice-President.

Witness:

HENRY L. CLARK,

JEROME B. BROMLEY."

The mortgage called for by this contract was given at the time of the execution of the contract, and was in force at the time of the insolvency, but it appeared that up to that time its condition had not been broken.

*Geo. E. Lawrence* and *F. S. Platt*, for the defendant.

Any property which could have been taken on execution against the insolvent at the time of filing the petition passes to the assignee.

*Collender Co.* v. *Marshall*, 57 Vt. 238.

Title to the slates would not pass to the plaintiff until they had been boxed and loaded upon the cars. There was no delivery until then.

Sto. Sales §296 and notes; *Hale* v. *Huntley*, 21 Vt. 147; Benj. Sales §400 *et seq.*; Elger Cotton Cases, 22 Wall. 180; *Smith* v. *Sparkman*, 55 Miss. 649; *Tripp* v. *Armitage*, 4 M. & W. 687.

This rule is not altered by the fact that the goods were manufactured expressly for the plaintiff.

*Andrews* v. *Durant*, 11 N. Y. 35; *Ry. Co.* v. *Car Works*, 32 N. J. L. 517; *Dittmur* v. *Norman*, 118 Mass. 319; *Acramen* v. *Morris*, 8 C. B. 449; *Mueklow* v. *Mangles*, 1 Taunt. 318; *Gabarron* v. *Kreeft*, 10 L. R. Ex. 274; *Rider* v. *Kelley et al.* 32 Vt. 268.

The imperative rule of the law is that there must be a change of possession, and actual good faith does not help the vendee without this.

*Weeks* v. *Prescott*, 53 Vt. 57.

*J. C. Baker*, for the plaintiff.

Under the contract and mortgage these slates were never the property of Ainsworth & Cole.

*Bemet* v. *Smith*, 15 Wend. 493; *Ballentine* v. *Robinson*, 46 Penn. 177; *Shawhan* v. *Van Nest*, 25 Ohio St. 490; *Iron Co.* v. *Buffinton*, 103 Mass. 62; *Thorndike* v. *Bath*, 114 Mass. 116; *Goddard* v. *Binney*, 115 Mass. 450.

The doctrine of fraud in law does not apply because these chattels were never in existence as the property of Ainsworth & Cole. What they were required to do was simply to expend certain labor upon them for the plaintiff. *Bellows* v. *Wells*, 36 Vt. 599; *Leavitt* v. *Jones*, 54 Vt. 423; *Hull* v. *Hull*, 48 Conn. 250; *Wolcott* v. *Hamilton*, 61 Vt. 79.

The opinion of the court was delivered by

START, J. Upon the facts found by the referee, we hold that the slate in question was subject to attachment by the creditors of Ainsworth & Cole, at the time of the adjudication in insolvency, and that the same passed to their assignee.

By the terms of the contract relied upon by the plaintiff, the slate was to be delivered on the cars in Castleton. It was not so

delivered. It was ready for shipment, partly packed, on the premises of Ainsworth & Cole in Poultney, and in the possession of the defendant as messenger of the court of insolvency for the district of Fair Haven, at the time the plaintiff caused it to be replevied.

It is a rule in this State, that a sale of chattels is regarded as fraudulent in law as to third parties, unless there is a change of possession, and, unless the possession is open, notorious, and exclusive, the property remains subject to attachments by the creditors of the vendor. *Weeks* v. *Prescott*, 53 Vt. 57. The creditors of Ainsworth & Cole had rightfully attached the slate, and it remained in the possession of the officer making the attachment, until the defendant took possession of it by virtue of insolvency proceedings against the firm. "An assignment under order of a court of insolvency shall vest in the assignee all the property of the debtor, real and personal, which * * * might have been taken on execution upon a judgment against him at the time of the filing of the petition." R. L. 1820. In *Collender Co.* v. *Marshall*, 57 Vt. 237, Rowell, J., says: "This language is too explicit for interpretation. By it the assignee is clothed with much higher and more extensive rights than the debtor himself possessed, and under it the simple question is, could the property in question have been taken on execution against the debtor at the time of filing his petition? If it could, it passed to the assignee by the very terms of the statute."

2. The title to the slate never passed to the plaintiff. It is well settled and uniform in all cases, that when anything remains to be done by either or both parties precedent to the delivery, the title does not pass. *Hale* v. *Huntley et al*, 21 Vt. 147. By the terms of the contract, Ainsworth & Cole were to box the slate and deliver it upon the cars at Castleton. No part of the slate had been delivered on the cars, only a portion of it had been boxed, and delivery on the cars had not been waived by the plaintiff.

The fact that the slate was manufactured for the plaintiff, and the plaintiff had made payments, relying upon representations that the same was ready for shipment and would be shipped, does not make the case an exception to the above rule. *Andrews* v. *Durant*, 11 N. Y. 35; *Dittmar* v. *Norman*, 118 Mass. 319. The plaintiff was under no obligation to pay for the slate in advance of a delivery upon the cars, and it did not own the material out of which the slate was manufactured, and had no property in the manufactured slate. In the case of *Andrews* v. *Durant*, *supra*, Parker, J., says: "The general rule is, that, if a person contracts with another for a chattel which is not in existence at the time of the contract, though he pay him the whole value in advance, and the other proceeds to execute the order, the buyer acquires no property in the chattel till it is finished and delivered to him."

3. The plaintiff cannot hold the slate by reason of its mortgage upon the quarry from which the slate was taken. The conditions of the mortgage had not been broken at the time the slate was quarried, and the contract between the mortgagor and the mortgagee provided for the quarrying of slate on the mortgaged premises. "Every mortgagor shall, until condition broken, have, as against the mortgagee, the legal right of possession to the mortgaged premises, unless it is otherwise stipulated in the mortgage deed." R. L. 1258. Whatever the mortgagor severs from the freehold before condition broken, becomes his property. *Abbott* v. *Edgerton*, 30 Vt. 208.

*Judgment reversed, judgment for the return of all the property replevied, and for the defendant to recover one dollar damages and his costs.*