# DANIEL COFFRIN v. MELISSA COLE.

### OCTOBER TERM, 1894.

*Equity. Injunction as to use of spring. Evidence. Decree supported by pleadings.*

1. The defendant claimed title to the spring in dispute by adverse user by herself and grantor. Her deed conveyed "all the right" of the grantors "to take water from the spring on the granted premises." *Held*, that it might be shown by parol that the grantor of the defendant told her at the time the deed was made that she had no interest in the spring, but only a verbal license to pump water from it.

2. Where the bill alleges that the orator was the owner of the spring, and the answer denies this and sets up ownership in the defendant, the question of title is in issue, although the purpose of the bill is to enjoin the defendant from befouling the water.

3. A decree, confirming the title of the orator and enjoining the defendant from interfering with the orator's use of the spring, was proper upon the case thus made.

Bill in equity for restraining the defendant from interfering with a certain spring. Heard at the June term, 1894, Caledonia county, upon the report of a master and exceptions thereto. TYLER, Chancellor, decreed *pro forma* that the orator's title to the spring of water described in the bill be confirmed, and that the defendant be perpetually enjoined from interfering with the orator's use thereof. The defendant appeals.

The controversy was in respect to a certain spring from which both the orator and defendant took their water for domestic purposes. Both parties claimed title to their respective premises through one Hosea Welch, 2d, who obtained title to the same in 1854, and continued in possession until September, 1878. At the time Hosea Welch, 2d, went into possession the only buildings upon the premises were those now occupied by the orator; and these buildings were supplied with water from the spring in dispute, which was situated some ten rods from the buildings upon an elevation, and from which the water was conducted to the buildings through a half inch lead pipe. The master found that the buildings continued to be supplied with water from this spring in this manner from the time said Hosea Welch went into possession in 1854 down to the commencement of this suit.

The premises of the orator and defendant were originally embraced in the same parcel, and continued to be until 1878 or thereabouts. The buildings of the defendant were erected in 1872, under an arrangement between Hosea Welch, 2d, and one Holmes, by which Holmes was to construct the building, and was to have the right to purchase the same upon certain terms and conditions which were never complied with. While Holmes occupied the house he took water from the spring in question by pumping it through a pump at the spring, and carrying the water in pails from there to his house. Holmes occupied the premises until about the year 1876, and from that time until March, 1878, Hosea Welch, 2d, rented the premises to different tenants who were supplied with water by pumping it from the spring in the same way that Holmes had been.

March 4, 1878, Hosea Welch, 2d, conveyed to his daughter Eliza, and her husband Lewis Keenan, the premises now owned by the defendant. The spring in question

was situated upon the premises so conveyed, and the deed of conveyance contained the following exception :

"Always excepting a spring of water which I reserve to myself, together with the right to enter upon said lands and take up and lay down logs to said spring."

After the execution of this deed to Eliza and her husband, she continued to occupy the premises by herself and tenants until the spring of 1881. At that time a pipe was placed in the ground extending from the spring to the kitchen in the defendant's house, and a pump was attached to the pipe in the kitchen, and the water required for domestic purposes has been since then obtained from the spring through this pipe and pump.

The master found that when this pipe was laid from the spring to the house of the defendant, Eliza asked permission of her father, the owner of the orator's premises, to extend the pipe in that manner so that she could pump the spring directly into her house, and that Hosea Welch, 2d, told her she might put in the pipe and pump, but that it must not in any way interfere with his use of the spring, nor infringe on his right to take the water to his premises.

The said Eliza subsequently married Matthew Caldwell, and she and her husband on May 3, 1889, conveyed the defendant's premises to him. Said deed contained among other things the following, as a part of the description :

"All our right to have and take water from spring of water on said granted premises."

Subject to the exception of the defendant, the orator was allowed to show that at the time of the execution of this conveyance to the defendant, the said Eliza objected at first to having anything written in with reference to the spring of water, and that she then told the defendant that she did not own any interest in the spring ; that her father gave her the right to pump the water from the spring to the house, but that it was only by word of mouth, and that her father re-

tained full control of the water, and had a right to stop them from using the water at any time.

The master did not find that the defendant had in any way befouled the spring, nor interfered with the orator's pipes in the spring, but did find that for three years last past the water had not run through the orator's acqueduct for some reason which he was unable to determine. He found that the defendant claimed to own the spring and had so notified the orator, and further found that there was sufficient water in the spring for both the orator and defendant.

The prayer of the bill was that the defendant be restrained from meddling with the water in the spring, or the pipes leading therefrom, or from in any way polluting or contaminating the water in said spring, and from interfering with the orator in cleaning and repairing the said spring and pipes.

*Bates & May* for the orators.

*R. M. Harvey* for the defendant.

ROSS, C. J. I. The defendant's exception to the master's report, because he received and considered the testimony of J. K. Darling, was properly overruled. His testimony was, that when he made the deed of the land on which the spring in controversy is located, to the defendant, her grantor told defendant that she did not own any interest in the spring ; that her father had given her verbal license to pump water from the spring to the house on the land being conveyed, but retained full control over the water, and had the right to stop the use at any time. The deed, then being made, conveyed to the defendant "all right" the grantors had "to take water from the spring on the granted premises." The deed does not define the right conveyed. It was proper to show what right the grantors claimed. This testimony did not

attempt to abridge, but to define the right conveyed. It also showed that the right conveyed was different from the right which the defendant claims in her answer. She there claims an absolute right, acquired by adverse use, by her grantors and herself, for more than fifteen years. This evidence also showed that the defendant was then informed that the use by her grantors was under a license from the common grantor of both parties, and for that reason not adverse to the orator's title to the spring. The defendant's counsel further contends that this evidence was erroneously received by the master, because neither the orator's title and right to use the spring, nor that of the defendant, were put in issue by the bill and answer. The bill is somewhat loosely drawn, and manifestly, mainly for the purpose of charging the defendant with polluting the spring, which is unsustained by the findings of the master. The bill, however, alleges that the orator and his grantors had enjoyed the free, uninterrupted, undisturbed possession of the spring for fifty or more years, and that he has the right to enter upon the land of the defendant to clean *his spring* and the pipes leading therefrom. It further alleges that the grantors of the defendant never claimed title to the spring, but that the defendant claims title to the land where the spring is located "including the spring in dispute." The answer denies that the grantors of the defendant never claimed title to the spring, and never used it except under a license from the common grantor of the parties, and then alleges that she and her grantors for more than sixteen years have by right used the water from the spring, and that such use has been open and under a claim of right. Hence, the facts alleged in both bill and answer fairly put in issue the rights of the respective parties to this spring of water.

II.   The defendant further contends that the decree of the chancellor was erroneous, in that it confirms the orator's title to the spring of water, because the orator does not pray to ·

have his title thereto, and the defendant's rights therein, if any, ascertained and determined. The bill prays for an injunction restraining the defendant from meddling with the water in the spring or the pipes therefrom, from in any way fouling the water, and from interfering with the orator in cleaning and repairing the spring and the pipes leading therefrom, and for "such other and further relief as the nature of the case may require." The general prayer for relief, "such as the nature of the case may require," is sufficient to uphold any decree properly required, fully and effectively to dispose of the issues raised by the bill and answer. As we have shown, the bill and answer put in issue the rights of these parties, if not to the title to the spring, to the use of the water of the spring. The latter is not in legal effect different from their respective titles in and to the spring; for, the right to use the waters flowing from a spring arises out of the title to the spring. On the facts found the title to this spring is in the orator, with the right to enter upon the defendant's land at reasonable times, and in a reasonable manner, and do what is necessary to give him the use of the spring. This is his right under the conveyances from the common grantor, Hosea Welch, 2d. But Hosea Welch, 2d, when owning the orator's premises, and when conveying the defendant's premises to his daughter, who, with her husband, conveyed to the defendant, gave her verbal permission to take water from the spring in the manner it is now being taken, "but it must not in any way interfere with his use of the spring, nor infringe on his right to take water to his premises"—the premises now owned by the orator. The daughter acted upon this parol license, and put in the pump and pipe now in use. She, under the license from her father, acted upon by her, under the decision of *Clark* v. *Glidden*, 60 Vt. 702, had the right to use the water from the spring in the manner she then entered upon its use, but so as not to infringe upon her father's right until after she

had realized the full benefit of the expenditure incurred, or until the pipe and pump then put in were fairly worn out. Then the license can be revoked. But her exercise of this right must be of such a character as not to interfere with the use then made of the water of the spring by her father. This right of the daughter has come to the defendant, and the right of the father has come to the orator. The defendant had, on one occasion, denied the orator the right to enter upon her premises to clean and repair the spring and pipe, and had made some threat, looking to the pollution of the water. Under the pleadings and facts found it was proper, not only to confirm the orator in his title to the spring of water, but to enjoin the defendant from interfering with his use of the spring, it not being found that the orator had made or claimed to make any improper use of his title to the spring, or the water thereof, nor to interfere with the defendant's right to use the water under the terms of the license.

*Decree affirmed and cause remanded.*