ALFRED F. HUBBARD v. GEO. M. MOORE ET AL.

May Term, 1895.

*Partnership.   Whether real estate is partnership assets. Conveyance of partnership property in fraud of partnership creditors.   Evidence.*

1. The question being whether certain real estate was to be treated as partnership assets, and so liable for an indebtedness of the defendant to the partnership, the finding of a master to whom is referred the winding up of the partnership is conclusive.

2. *Held,* that the evidence tended to show that the defendant, Milton G., knew soon after April 11, 1891, that the orator claimed that the conveyances from the defendant, Geo. M., to himself of that date were in fraud of the orator's rights.

3. A partner cannot convey partnership property in satisfaction of his individual debt, and one receiving such conveyance holds it subject to the rights of the partnership creditors; nor does he by paying off an incumbrance against such property after receiving the conveyance become a creditor of the partnership.

4. In determining the indebtedness of the firm the list of its liabilities contained in a tax inventory made up by one of the defendants, was properly admitted.

5. As bearing upon the question whether this real estate was partnership property, the fact that it was set in the grand list to the firm and that the firm paid taxes on it was admissible.

6. The question being whether the defendant, Geo. M., was indebted to the defendant, Milton G., at a certain time, the tax inventory of the latter covering that period, signed but not sworn to, was properly admitted.

7. *Held*, that under the circumstances of the case the orator might testify that he understood that the real estate was embraced in the written agreement of co-partnership.

8. The debts of the co-partnership being nearly as much as the value of the partnership property, a considerable part of which consisted of the real estate in question, a conveyance by the defendant partner of his entire interest in said real estate would be in fraud of the partnership creditors, and would justify a dissolution of the co-partnership and a decree for a sale of such real estate.

Bill for the dissolution and winding up of a co-partnership and the setting aside of certain conveyances of real estate as in fraud of partnership debts. Heard upon the pleadings and a master's report, and exceptions by the defendants thereto, at the December term, 1894, Windsor county. Ross, chancellor, overruled the exceptions of the defendants and decreed that the co-partnership be dissolved; that the real estate in question was partnership property; that the conveyance of the same by the defendant, Geo. M., to the defendant, Milton G., was void, and that the same to be annulled and the real estate sold regardless thereof. The defendants appeal.

From the master's report it appeared that in 1888 the orator was the owner of certain mills, water privileges, etc., and a considerable quantity of timber land, and was engaged in taking the timber from said land and manufacturing it into lumber, and that he also owned a store and quite an amount of personal property. The defendant, Geo. M., who was the nephew of the orator, entered into negotiations with the orator for a purchase of a one-half interest in all this various property and the formation of an equal partnership with the orator, for the carrying on of the business in which the orator was then engaged; and such an arrangement was finally concluded. By the terms of this agreement the defendant was to pay the orator the money for his interest in the property. In January, 1889, the orator conveyed in pursuance of the agreement, a one-half interest in all the property to Geo. M. Geo. M. could not pay as he agreed, but paid a certain amount in cash, gave his note to the orator for a certain other amount, securing the same by mortgage on the real estate, and the balance, about seven hundred dollars was charged to Geo. M. and credited to the orator upon the books of the company. This sum was never paid but had been increased to something over eight hundred dollars at the time of the bringing of this suit.

The orator and Geo. M. began business as partners as aforesaid in December, 1888, before the conveyance and continued as such to the date of the filing of the bill in this case. In March, 1889, they drew up and signed written articles in which they attempted to reduce to writing their previous partnership agreement.

The defendant, Geo. M., was the maker of a note for $1200 on which the defendant, Milton G., his father, was surety. For the purpose of securing the said Milton G. against liability, upon said suretyship, on April 11, 1891, Geo. M. conveyed to him by deed absolute his entire interest in the aforesaid real estate. The orator did not learn of

this conveyance until some months afterwards, but as soon as he did he vigorously protested against the same and insisted that the real estate was held for the payment of the partnership debts notwithstanding said conveyance.

The partnership continued until November, 1893, when this bill was filed. The master found that the partnership debts April 11, 1891, amounted to some five thousand dollars and that the value of the partership assets, including the real estate, was only about six thousand dollars, and that the amount of the debts continued about the same down to the commencement of this suit, although the orator had been obliged to take up and pay a portion of the same from his own means. The question litigated was whether the conveyance to Milton G. was void, as to the indebtedness of the partnership and as to the indebtedness of Geo. M. to the partnership. The defendants insisted that it was valid for the reason that the real estate was not a part of the partnership assets, but only the use thereof. The master found that it was the intention of the parties that it should be, and that the same was a part of the partnership assets.

The master found that the defendant, Milton G., knew, soon after the conveyance of April 11, 1891, that the orator claimed that these conveyances were in fraud of his rights. The first exception of the defendants was that there was no evidence tending to support this finding. Upon this point the master reported :

"This finding is based upon showing that he importuned his co-surety, Levi B. Moore, upon the Vilas E. Moore note, to share with him in the security afforded by said conveyances from his son, that the said Levi B. Moore flatly declined so to do, and assured the said Milton G. that there would be trouble about it; upon the intimate relations existing between father and son. The communications from son to father mentioned on pages three and four of this report, and the knowledge of the father of the apparent way

in which the business was conducted.    The inadequate explanation by both son and father of giving of the absolute deeds instead of a mortgage."

The other questions decided sufficiently appear in the opinion.

*W. W. Stickney* and *J. G. Sargent* for the orator.

A partner cannot convey partnership property in satisfaction of his individual debt.    3 Kent, 43 ; Pars., Part., s. 90 and note ; *Washburn* v. *Bank*, 19 Vt. 278 ; *Miner* v. *Pierce*, 38 Vt. 610 ; *Dyer* v. *Clark*, 5 Met. 652 ; *Huiskamp* v. *Moline Wagon Co.*, 121 U. S. 310 ; *Matlack* v. *James*, 13 N. J. Eq. 126 ; *Farwell* v. *St. Paul Trust Co.*, 45 Minn. 495.

The tax inventory was properly received to show the liabilities of the firm.    *Flint* v. *Flint*, 6 Allen 34 ; *Kenerson* v. *Henery*, 101 Mass. 152.

*Gilbert A. Davis*, and *F. A. Walker* for the defendants.

No cause is shown for the dissolution prayed for.    1 Sto., Eq. Jur., s. 673.

As between the partners the real estate was not firm assets and creditors can only assert the equities of the partners.    *Rice* v. *Barnard*, 20 Vt. 479 ; *Kimball* v. *Thompson*, 13 Met. 283 ; *Robb* v. *Mange*, 14 Gray 534 ; *Fitzpatrick* v. *Flannagan*, 106 U. S. 648.

TYLER, J.   It appears by the master's report that on Dec. 1st, 1888, the negotiations for a co-partnership between the orator and the defendant, George M. Moore, were concluded by the latter's purchasing of the orator a one-half interest "in the mills, water privileges, timber lands, stock in the mills, equipment for carrying on the business and the stock in trade."   The purchasing price was five thousand three hundred and ten dollars and eighty-three cents, of which one thousand five hundred and thirty-five dollars and

eighty-three cents was for the personal property, and three thousand seven hundred and seventy-five dollars for the real estate. While the negotiations were pending the two defendants examined a part of the lands in question with a view of such purchase when George M. could dispose of certain property. Two deeds from the orator to Geo. M., conveying an undivided half interest in the real estate, were executed Jan. 9, 1889, and a co-partnership agreement was executed Mar. 6, 1889. The business of the partnership actually began on Dec. 1, 1888, and by the agreement the partnership was to continue five years from that date.

One clause in the agreement was that the use of all the farm and timber lands, mills and machinery, should be delivered into the partnership business. The master finds that it was understood by the parties that all the property mentioned in the agreement was to be partnership property, and that the partners were to share equally in the profits and losses of the business.

The defendant, Geo. M., in fact paid the orator less than one-half of the agreed price. He gave him notes for two thousand one hundred and forty-five dollars and secured them by a mortgage of his interest in the five parcels of land conveyed in the second deed. About seven hundred dollars was charged to him and credited to the orator on the partnership books.

The defendants contend that the undivided half of the real estate so conveyed to Geo. M. was not partnership property, but only the use thereof. If this were an open question it would be apparent from the facts reported that the purpose of the conveyance was to make the entire real estate described partnership property. Story on Part. s. 93 says:

"Indeed, so far as the partners and their creditors are concerned, real estate belonging to the partnership is in equity treated as mere personalty, and governed by the general doctrines of the latter. And so it will be deemed in equity

to all other intents and purposes, if the partners have, by their agreement, purposely impressed upon it the character of personalty."

But the master has decided this question as one of fact, and his decision is final if made upon proper evidence.

The first exception to the report cannot be sustained. What Geo. M. told his father about his purpose to go into business with the orator; the subsequent taking of the deeds by Geo. M. from the orator; the knowledge that Milton G. had of their contents, and of the manner in which the business was carried on; the refusal of Levi B. Moore to share in the security, saying there would be trouble, were circumstances that warranted the master in finding that the real estate was partnership property and that "either before or soon after April 11, 1891, Milton G. knew that the orator claimed that the conveyances from Geo. M. to himself were an attempt to defeat the orator's rights in respect to the real estate."

The second exception cannot avail the defendants. The fact that Milton G. paid off a part of the mortgage which Geo. M. gave the orator and which the latter had assigned to the savings bank, in consideration of the conveyance of Geo. M. to him, did not relieve him from the fraud in taking the conveyance, in view of the fact that Geo. M. was then indebted to the firm in the sum of eight hundred and eighty-five dollars and forty cents and that the debts of the firm were nearly equal to the value of the partnership property. This payment reduced Geo. M.'s indebtedness to the orator and improved the latter's security for the remaining note, but it did not make Milton G. a creditor of the firm. The purpose of the payment evidently was to benefit Geo. M., and so far as this payment is concerned it was a payment of Geo. M.'s individual debt in consequence of the latter having conveyed to Milton G. partnership prop-

·erty.   This transaction gave Milton G. no equity as against the partnership creditors or the orator.

Parsons on Partnership, s. 90, lays down the general rule that whenever a party receives from any· partner, in payment for a debt due from that partner only, whether the ·debt be created at the time, or before existing,   *   *   *   the presumption of law is that the partner gives this and the creditor receives it in fraud of the partnership.

In the note to this section it is said that a partner has no authority to dispose of partnership property in payment oɪ an individual debt, and that a creditor of the partner taking such property has no right to hold it as against the partnership, whether he claims absolute title, or holds the property by way of pledge or mortgage.   Numerous cases are cited from the text and from the note in support of this rule.

It was not error to admit the list of debts and liabilities of the firm contained in the tax inventory of 1891.   It was made by Geo. M. and was in the nature of an admission by him.   To have considered the value of the firm's personal estate would have been error, for the value was fixed by the listers.

The fact that the real estate in controversy was set to the firm in certain years in the grand list of Plymouth, and that the firm paid the taxes thereon, was properly admitted as bearing upon the question whether it was or was not partnership property.

It was a controverted question whether or not Geo. M. was indebted to his father at the time of the formation of the partnership.   Bearing upon this question the tax inventory of the latter for the year 1889, signed by him though not sworn to, was properly admitted.

One prayer in the bill is that the copartnership agreement may, if necessary, be reformed, so as to expressly declare —what the orator claims to be the fact—that the real estate was partnership property.   Evidence seems to have been

admitted by the master, without objection, tending to show that negotiations were for some time carried on between the orator and Geo. M., relative to the formation of the partnership, in which it was agreed and understood that the "timber lands," with other enumerated property, were to go into the partnership. The defendants claimed that the written agreement did not bear this construction, and that by its terms only the use of the real estate went into the business. In this view it was competent for the orator to testify to his understanding whether the real estate was included in the written agreement or not. The evidence was admitted upon the ground that it tended to sustain the orator from the impeachment that resulted from his signing an agreement apparently different from the terms of the oral one to which he had testified, and it was competent for this purpose. If the written contract was open to construction on this point it was competent for the orator to testify to his understanding that the writing embodied the oral agreement.

The report states that an angry interview took place between the partners upon the orator's discovery of his partner's conveyance to Milton G., in which the orator insisted that the conveyance would be of no avail as against his rights under the partnership agreement. The business was continued until a short time before Nov. 23, 1893, the time of bringing this suit.

It is found that of the identical debts owed by the firm April 11, 1891, only one, and that of $300, was outstanding when the suit was brought; that Nov. 1, 1893, the firm was owing between $4,000 and $5,000, including the Goddard note; that between Nov. 10 and Nov. 23, the orator retired out of his own funds about $1,600 of these debts; that at the time of the hearing, May 8, 1894, the debts amounted to $1,467.-85, but whether $731.66 in the receiver's hands, realized from the sale of personal property, had been applied in liquidation of the debts, did not appear; that the books

showed the sum of $2,323.60 due the orator from the firm, and that the sum of $1,055.18 was due from Geo. M. to the firm. These sums, however, might be varied in certain contingencies. Neither the amount of the firm's debts nor the financial relation of each partner to the firm is definitely found.

It is found that the real estate was partnership property; that defendant, Geo. M., had no means whatever, besides his interest in the partnership property, with which to pay any of the firm's debts or his own debt due the firm; that in this financial condition he deeded to his father the entire interest in the partnership real estate which the orator had conveyed to him, as security for his father for signing a private note with him. In the circumstances the conveyance was such a fraud upon the orator as justified a dissolution of the partnership. It seems apparent from the report that the avails of sales of the personal property would not pay the orator's and other debts of the firm, though the value of the personal property is not definitely found. Therefore the decree in respect to the sale of the real estate was warranted. The sale of "the fifth parcel—the Colburn lot—" so far as the defendant, Geo. M., is concerned, would be of his equity of redemption therein, and would be subject to the mortgage executed by the orator and Milton G., March 14, 1892, if that is still a subsisting liability. What equitable right the defendant, Milton G., may have in the mortgage upon which he made the payment of Nov. 20, 1893, as against his co-defendant, we are not now called upon to decide.

_Decree affirmed and cause remanded._