MARK MEARS *v.* HARRY DANIELS.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 4, 1911.

*Logs and Logging—Assumpsit for Proceeds of Lumber—Ownership*
*—Evidence—Relevancy—Tax Inventories—Harmless Error*
*—Scope of Cross-Examination—Discretion of Court—Excep-*
*tions—Failure Affirmatively to Show Error—Sales—Vesting*
*of Title in Purchaser—Waiver of Delivery—Acceptance of*
*Property.*

Plaintiff's failure to return any tax inventory to the listers in the town where certain logs and lumber were situated on April 1, tends to show that he did not then own the property.

Testimony that in his tax inventory in the town where he resided plaintiff did not list certain personal property situated in another town was harmless to plaintiff, as such property was not taxable in the town where he resided.

Plaintiff's answer that he could not tell whether in a designated year his tax inventory in the town where he resided listed anything as due from defendant was harmless to plaintiff.

Plaintiff's testimony that he discharged a certain mortgage and cancelled the note thereby secured, if error, was harmless to him where the note and mortgage were subsequently introduced in evidence and showed that they were cancelled and discharged.

An exception to the allowance of a question the answer to which does not appear of record is not available.

Where plaintiff's witness, whom defendant claimed to be the owner of certain logs, testified in direct examination that plaintiff owned the lumber sawed from those logs, and that the witness was acting for plaintiff under a contract to saw and deliver, the witness was properly allowed in cross-examination to testify that those logs were in his mill yard on April 1, and that he listed them in his tax inventory.

The affirmative answer of the same witness in cross-examination to the question whether the funds used by him until he went to sawing and lumbering came from defendant, if error, was harmless to plaintiff as against his objection to the question "as not affecting his case, and especially that it does not meet defendant's own theory of the case, either in form or substance."

Where plaintiff's witness, whom defendant claimed to be the owner of certain logs, testified in direct examination that plaintiff owned the lumber sawed from those logs, that the witness was acting for plaintiff under a contract to saw and deliver, and that he sawed those logs and certain other logs and mingled the product, he was properly allowed to testify in cross-examination that he treated that stock of logs and handled them all as if they were his own.

In cross-examination, an adverse party is usually allowed great latitude of inquiry, limited only by the sound discretion of the court, with a view to test the memory, the purity of principle, the skill, accuracy, and judgment of the witness, his life and habits, and the like; and, unless it appears from the record that the discretion of the trial court in the particular instance was abused, the exercise of that discretion is not reviewable.

Where plaintiff's witness, whom defendant claimed to be the owner of certain logs, testified in direct examination that plaintiff owned the lumber sawed from those logs, that the witness was acting for plaintiff under a contract to saw and deliver, and having testified in cross-examination that a certain slip pasted in the back of an account book was made by him, he was properly allowed further to testify that in the figures on that slip he had given defendant credit for $1500. which defendant paid plaintiff in February, 1908; that in arriving at the figures on the slip, witness charged to defendant on one side of the account all lumber that witness had shipped to defendant; and that from the figures on the slip the total amount he was owing defendant was $7,239.74.

Where plaintiff's witness, whom defendant claimed to be the owner of certain logs, testified in direct examination that plaintiff owned the lumber sawed from those logs, and that the witness was acting for plaintiff under a contract whereby the witness was to put plaintiff's logs into the pond, saw them into boards, put the boards into stacks, and cut and stack the chair-stock, without compensation from plaintiff, the witness was properly cross-examined as to the fair price for doing this work.

A witness's answer to the question as to whether he had filed a designated claim in the court of bankruptcy, "I don't know as I did; like to see the paper," was harmless.

Oral evidence as to the contents of a written instrument is harmless, where the same thing appears from the written instrument put in evidence.

In assumpsit for the proceeds of lumber sawed from logs that defendant claimed were not owned by plaintiff, but were the property of the sawyer, and were manufactured by money advanced by defendant to the sawyer at plaintiff's request; and that defendant had paid palintiff a designated sum of money in full settlement of plaintiff's claim to the logs and lumber, defendant was properly allowed to testify that he did furnish the sawyer money, at one time $1,250 to buy land, and $100 at another time.

In assumpsit for the proceeds of lumber sawed from logs that defendant claimed were owned by plaintiff's witness, who testified that plaintiff owned the lumber sawed from those logs, and that the witness was working for plaintiff under a contract to saw and deliver, defendant was properly allowed to testify to two separate conversations had by him with plaintiff's witness, in which the witness gave conflicting accounts as to where he got the money to buy the logs in question.

In assumpsit for the proceeds of lumber sawed from logs that defendant claimed were not owned by plaintiff, but were the property of the sawyer, and were manufactured by money advanced to the sawyer by defendant at plaintiff's request, defendant having testified that he sent money to the sawyer with which to saw the logs, giving dates and amounts, was properly allowed further to testify as to what money he so sent, and the purpose.

Defendant having testified on direct examination in his own behalf that at a certain time he was at the mill where the logs in question were being sawed and saw men working there, was properly allowed further to testify that twelve or thirteen men were working, and that he knew when pay-day came.

Where the record of an exception to the admission of evidence in re-direct examination shows nothing as to the cross-examination, nor the ground of objection, error does not appear.

In assumpsit for the proceeds of lumber sawed from logs that defendant claimed were not owned by plaintiff, but were the property of the sawyer, and were manufactured by money advanced by defendant to the sawyer at plaintiff's request; and defendant's evidence tended to show that he paid plaintiff a designated sum of money in full settlement of plaintiff's claim to the logs and lumber, and that thereupon the latter agreed to look to the sawyer for the balance of his account, defendant was properly allowed to introduce in evidence a chattel mortgage and note for $1000 secured thereby, executed by the sawyer to plaintiff subsequent to the alleged settlement agreement.

Where a contract of sale requires the seller to deliver the goods on board the cars at a designated railroad station, until the goods are so delivered something remains to be done by the seller to complete delivery under the contract, and title to the goods does not vest in the purchaser.

Where a contract of sale of chair-stock required the seller to deliver it on board the cars at a designated railroad station, and when the chair-stock was cut and ready for delivery, and the purchaser was notified thereof, he told the seller that it could not then be shipped, giving the reasons, and the record states that "the chair-stock remained in the mill during the remainder of the winter until the spring of 1908, subject to the order of the" purchaser, this means no more than that the chair-stock remained there ready to be delivered on notice from the purchaser, and does not show a waiver by him of the specified place of delivery nor an acceptance of the property.

Nor was a waiver of delivery and an acceptance of the property wrought by the facts that in the spring of 1908, when the seller asked the purchaser, "why not put the chair-stock down in the barn under cover," and the purchaser answered, "all right, put it down there," and there the seller put it, where it was later destroyed by fire; as it will be taken, the contrary not appearing, that the barn was the property of the seller, and so the conversation amounted to no more than an assent by the purchaser to the removal of the chair-stock to the barn to be housed till delivered according to the contract.

GENERAL ASSUMPSIT. Pleas, the general issue, accord and satisfaction, and declaration in off-set. Trial by jury at the March Term, 1910, Washington County, *Butler*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted. Plaintiff's evidence tended to show that in the fall of 1906 one Lamberton owed him a store account; that, under a contract with Lamberton, plaintiff purchased logs in his own name and had them delivered to Lamberton at the latter's saw mill; that Lamberton, at his own expense, agreed to manufacture those logs into lumber, to market the product, and to pay the gross proceeds thereof to plaintiff to be applied, first, on the purchase price of the logs, and, second, in payment of said store account; that under this contract a certain quantity of logs were delivered at Lamberton's mill, and were by him sawed into lumber and chair-stock; that plaintiff furnished no money for this purpose, but extended Lamberton further credit on said store account; that in the spring of 1907, under a written agreement with Lamberton, defendant purchased certain growing timber, the logs from which were, in accordance with that agreement, drawn by Lamberton to his said saw mill to be manufactured into lumber; and, under that agreement, defendant advanced Lamberton certain sums of money from time to time as the manufacture of said logs into lumber progressed; that those two lots of logs, the "Mears logs" and the "Daniels logs", were intermingled at the mill, as was also the lumber manufactured therefrom; that defendant purchased from Lamberton the lumber and chair-stock manufactured from those mingled logs; and that this lumber and chair-stock was manufactured and shipped at defendant's direction. Plaintiff claimed to recover the proceeds of the lumber manufactured from the "Mears logs".

Defendant claimed, and his evidence tended to show, that

the "Mears logs" were really purchased and owned by Lamberton; that as between defendant and Lamberton no balance was due; that defendant, at plaintiff's request, advanced Lamberton money for the manufacture of the "Mears logs"; that in February, 1908, defendant paid plaintiff $1,500 in full of plaintiff's claim in and to the logs and lumber, and that thereupon plaintiff agreed to look to Lamberton for the balance of his account. The other material facts are recited in the opinion.

*R. M. Harvey* and *E. M. Harvey* for the plaintiff.

It was error to charge that the lumber in question was never delivered to defendant. There was a constructive delivery when defendant requested that the chair-stock be held for him, and when it was held "subject to his order". 35 Cyc. 189, 192; *Rayer* v. *Rice,* 36 Pa. 178; *LaVie* v. *Tooze,* 79 Pac. 413; *Rothchild* v. *Rowe,* 44 Vt. 389; 43 Am. Dec. 678; *Thomas* v. *Degraffenreid,* 17 Ala. 602; *Wood* v. *Roach,* 52 Ill. App. 388; *Ryer* v. *Elnyre,* 2 Gill. 150; *Baker* v. *McDonald,* 1 L. R. A. (N. S.) 474; 2 Schuler's Personal Property, 243; *Robinson* v. *Hirschfelder,* 59 Ala. 503; *Neimeyer Lumber Co.* v. *Burlington,* 54 Neb. 321. 40 L. R. A. 534; *Dyer* v. *Libby,* 61 Me. 45; Tiedman on Sale, § 83; *Bethel Steam Mill Co.* v. *Brown,* 57 Me. 1; *Hotchkiss* v. *Hunt,* 49 Me. 213; *Windmuller* v. *Pope,* 107 N. Y. 674; *Robinson & Co.* v. *Berkey & Martui,* 111 Iowa 550. Whether the parties intended that the acts should constitute a delivery is for the jury, and so also is the ultimate fact whether there has been a performance of the contract by delivery. 35 Cyc. 202; *Clark* v. *Shannon,* 117 Iowa 645; *Pratt* v. *Chase,* 40 Me. 269; *Gibbons* v. *Robinson,* 63 Mich. 146; *Smith* v. *Lynes,* 5 N. Y. 41; *Wilson* v. *Russell,* 136 Mass. 211; *Goss Printing etc. Co.* v. *Jordan,* 171 Pa. St. 474.

*Fred L. Laird* for the defendant.

WATSON, J. The exceptions are considered in their numerical order.

Exception I. At the time of the transactions in question the plaintiff was a resident of the town of Marshfield. The

logs and lumber that his evidence tended to show he owned were located at the Lamberton mill in the town of Cabot, and by statute were taxable in the town where situated. P. S. 510. If the plaintiff owned this property, it was his duty to return the same by his inventory to the listers in that town for taxation. P. S. 543. His failure to return any inventory there had some tendency to show that he did not own the property. *Richardson v. Hitchcock*, 28 Vt. 757; *Hubbard v. Moore*, 67 Vt. 532; *Jaquith v. Shumway's Estate*, 80 Vt. 556.

Exception II. The fact shown by plaintiff's testimony that he did not include the logs and lumber in his inventory returned to the listers in the town where he resided could do him no harm. The property was not there taxable.

Exceptions III, IV. The question asked the plaintiff as shown by each of these. exceptions was, whether in the year 1908, he put into his inventory in the town of his residence anything as due from the defendant. In each instance the plaintiff answered in effect that he could not tell   Whether the questions were proper or not the answers were harmless. *Marcy v. Parker*, 78 Vt. 73.

Exception V. The defendant produced a certain mortgage of personal property, dated July 14, 1908, given by F. G. Lamberton to the plaintiff, together with a promissory note for one thousand dollars, secured thereby. Before offering the same in evidence, the plaintiff was asked by the defendant, subject to objection and exception, whether sometime later he cancelled the note and discharged the mortgage, and answered, "yes sir." The objection made was, (1) that by this examination the plaintiff was made the defendant's own witness; and (2) that the mortgage was not yet in the case  and plaintiff objected to its being "read in." The answer to  the first objection is, that by statute one party to a civil action may compel the adverse party to  testify as a witness in his behalf, and may examine him under the rules applicable to the cross-examination of a witness. P. S. 1596; *Childs v. Merrill*, 66 Vt. 302; *Swerdferger v. Hopkins*, 67 Vt. 136; *Hamilton v. Gray*, 67 Vt. 232; *Jennett v. Patten*, 78 Vt. 69. If the second objection ever had any force (which we do not decide), it was rendered harmless by  the subsequent introduction in evidence of the note and

mortgage by which it appeared that they were cancelled and discharged. *Nye* v. *Daniels*, 75 Vt. 81.

Exception VI. The plaintiff, having testified that his logs were to be sawed and the lumber put on the cars by Lamberton for nothing, was asked in cross-examination, subject to objection as immaterial, whether in order to do this Lamberton did not have to have hired help. The answer is not shown by the record, hence the exception is without avail.

Exception VII. F. G. Lamberton, called as a witness by the plaintiff, testified in direct examination that the plaintiff owned the lumber cut from the "Mears logs", and that the witness was acting for him under a contract to saw and deliver it. The defendant claimed that Lamberton was the real owner of this lumber, and that his testimony in respect to the ownership and his contract with the plaintiff was false. In cross-examination, under objection and exception, the witness was permitted to testify that those logs were in his mill yard the first day of April, and that he listed them in his inventory. In view of the direct testimony, this evidence brought out in cross-examination was proper as tending to discredit the witness.

Exception VIII. The same witness was asked in cross-examination, whether the funds used by him from February till April, until the time he went to sawing and lumbering, came from the defendant, and answered in the affirmative. The question "was objected to by the plaintiff as not affecting his case and especially that it does not meet defendant's own theory of the case, either in form or substance." Assuming this exception to be well taken, the grounds of the objection show that the plaintiff could not have been injured by the evidence.

Exception IX. The same witness, having testified to the sawing of the "Mears logs and the Daniels logs" and that they were not kept separate, was asked in cross-examination, subject to exception, whether he treated that stock of logs and handled them all as if they were his own, and answered that he did. This evidence was proper in cross-examination for the same reason as that under exception VII.

Exception X. The same witness, having testified in cross-examination that he sold the chair-stock to the defendant at

certain prices, and that the latter returned to the witness the amount received for each car, was asked whether the defendant credited the witness the amount of the car on the bill which he returned, and answered in the affirmative. The question was for the purpose of testing the memory of the witness, and permitted subject to exception, the ground of the objection being that the bills would show for themselves. It was said by Judge Redfield in *Stevens* v. *Beach*, 12 Vt. 538, that it is no doubt competent to put almost any question upon cross-examination, which may be considered important to test the accuracy of the witness. We think the rule is correctly stated by Chief Justice Shaw in *Hathaway* v. *Crocker*, 7 Met. 262, 266: "In cross-examination, an adverse party is usually allowed great latitude of inquiry, limited only by the sound discretion of the court, with a view to test the memory, the purity of principle, the skill, accuracy and judgment of the witness; the consistency of his answers with each other, and with his present testimony; his life and habits, his feelings towards the parties respectively, and the like; to enable the jury to judge of the degree of confidence they may safely place in his testimony." Unless it appears from the record, which it does not in this case, that the discretion of the trial court in the particular instance was abused, its exercise is not the subject of review. *Hathaway* v. *Goslant*, 77 Vt. 199.

Exception XI. During cross-examination the same witness was shown a slip pasted in the back of an account book, and, having testified that the same was made by him, was examined, subject to exception, and testified that in the figures thereon he had given the defendant credit for $1,500. which defendant paid to the plaintiff in February, 1908; that in arriving at the figures on the slip, the witness charged on one side of the account to the defendant all the lumber of every description, which witness had shipped to him; and that from the figures of the witness there made the total amount he was owing the defendant was $7,239.74. In permitting such examination there was no error. The facts thus elicited tended to discredit the evidence in chief of the witness respecting the ownership of the lumber in question and his contract with the plaintiff. *Cady* v. *Owen*, 34 Vt. 598.

Exception XII. The same witness, having testified that,

by his contract with the plaintiff, he was to put the plaintiff's hard wood logs into the pond, saw them into boards, put the boards into stacks, cut the chair-stock and stack it ready to be put onto the wagon, without compensation from the plaintiff, was properly cross-examined regarding the fair price for doing the work. It bore upon the probability of the truthfulness of his story.

Exception XIII. The same witness, having testified on cross-examination that he had a petition in bankruptcy pending, was asked, subject to exception, whether he filed a claim there, signed by him, against the plaintiff, "for lumber sold which should apply on my indebtedness to him and the balance if any should be paid to me, the amount of lumber sold and not credited estimated to be in the sum of $1300", and answered, "I don't know as I did. Like to see the paper." This exception stands as do exceptions III and IV, and for the same reason is without avail.

Exception XIV. The defendant introduced in evidence a certain contract in writing between himself and the witness Lamberton in reference to lumber operations between them. Subject to objection on the ground that the contract was in writing, the defendant testified that he had some arrangement with Lamberton by which he was to furnish money to get some logs in there. Since the same thing appeared from the written contract in evidence, this testimony could do no harm. The defendant was further permitted to testify, subject to objection and exception as immaterial, that he did furnish money, the first, $1,250 to buy land, and the next, on February 18, $100. The defendant claimed that the "Mears logs", so called, were in fact purchased and owned by Lamberton; that as between the defendant and Lamberton no balance was due; that the "Mears logs" were manufactured with money advanced by the defendant to Lamberton at the plaintiff's request; that in February, 1908 the defendant paid to the plaintiff the sum of $1,500. in full settlement of all claim of the plaintiff in and to the logs and lumber, and that thereupon the latter agreed to look to Lamberton for the balance of his account. In view of this claim, it cannot be said that the above evidence as to furnishing money was immaterial, and the exception is without force.

Exception XV. The defendant was allowed to testify to

two separate conversations had by him with the witness Lamberton, the first in respect to where he got his money with which to buy the Fifield and Freeman logs (which from the exceptions we understand to be the same logs hereinbefore called the "Mears logs"), and the second, as to who was going to furnish money with which to manufacture those logs; that in answer to the first question Lamberton said "Mark Mears helped him buy them;" and in answer to the second question, Lamberton said he "supposed Mark would have to; he said—in another breath— that Mark said that I would send up the money. I told him I didn't want he should saw any of them, or put any of my money into them until we found out who was to have them, and didn't want he should mix them with my logs or with my lumber; and he wanted when I went home that I should stop and see Mark." This testimony of what Lamberton said on the two occasions to which reference is made had a tendency to impeach him as a witness and was properly received.

Exception XVI. The defendant, having testified that he sent money to Lamberton with which to saw the logs, giving some dates and amounts, was permitted to testify, subject to exception, to what money he sent Lamberton, and the purpose. This was in line with the theory of the defence and proper.

Exception XVII. The defendant, having testified on direct examination in his own behalf that he was at the Lamberton mill during the summer of 1907 and saw the men working there, was permitted to testify, subject to exception, that twelve or thirteen men were working and that he knew when pay day came. It was not error to receive this evidence in connection with that under the preceding exception showing that the money or some of it sent to Lamberton by the defendant was to finish the "mixed" lumber, and "to jigger the chair-stock".

Exception XVIII. The defendant was allowed to testify on re-direct examination, subject to exception, that he went over the lumber accounts from time to time with Lamberton and that the latter never raised any question as regards two per cent in cash and five per cent discount, and that they never had any dispute over accounts. The exceptions do not show that any ground of objection was given, nor do they show any-

thing regarding the cross-examination. Therefore error does not appear.

Exception XIX. The plaintiff was called to the stand by the defendant and testified, that aside from the balance of book account and grocery account the plaintiff was holden for Lamberton as indorser—"there was this book account and this note I have got, that was all"; that at the time of taking the chattel mortgage Lamberton was owing him grocery bills or book account, "$450 for my chair waste money" used up, which is not reckoned in the store account; that the chattel mortgage had nothing to do with the lumber deal; that Lamberton was not owing him anything aside from the book account and what plaintiff was holden for on notes—all told more than $1000,— nearer $2000, or more. On the above testimony the court admitted in evidence the chattel mortgage and the promissory note, to which plaintiff excepted. The ground of the objection does not appear. As before seen the defendant's evidence tended to show that in February, 1908, the defendant paid to the plaintiff the sum of $1,500. in full settlement of all claim of the plaintiff in and to the logs and lumber, and that the latter thereupon agreed to look to Lamberton for the balance of his account. The chattel mortgage produced, dated July 14, 1908, was given by Lamberton to the plaintiff, together with the note for $1,000 secured thereby. The taking of this note and mortgage from Lamberton by the plaintiff at that time was a circumstance-tending to corroborate the defendant's testimony touching such settlement between him and the plaintiff and the agreement by the latter to look to Lamberton for the balance of his account, and was properly received.

Exception XX. The plaintiff claimed to recover for chair-stock, amounting to the sum of $483.88, which was destroyed by fire at the Lamberton mill in July, 1908. Plaintiff's evidence tended to show that the defendant placed with Lamberton orders for chair-stock to be cut from certain patterns furnished by him, and at a certain price per piece, delivered on board cars by Lamberton at Marshfield for transportation to Gardner, Massachusetts, and seven carloads were so cut and shipped at his order. In December, 1907, Lamberton cut from the "mixed" lumber a car of chair-stock under this order and then informed the

defendant that he was ready to ship. Whereupon the defendant told Lamberton he had been notified that the sheds at Gardner were full and that the company to which he was selling did not wish him to ship it; that the chair-stock remained in the mill during the remainder of the winter and until the spring of 1908, subject to the orders of the defendant. It being in Lamberton's way for the spring sawing, he said by telephone to the defendant, "Why not put it down in the barn under cover?" to which defendant replied, "All right, put it down there." Lamberton removed the chair-stock to the barn, where it remained until destroyed by fire. The selling price was so much per piece, f. o. b., Gardner, delivered on board cars at station (Marshfield) some four or five miles distant, less freight to Gardner. The plaintiff knew of this contract with the defendant for the "mixed" lumber but not of the above facts. The court charged the jury that this lumber was never delivered to the defendant, the defendant never received it, and therefore no recovery therefor could be had under the declaration in this action for goods sold and delivered. To which the plaintiff excepted, claiming that the above evidence showed a complete sale and should be submitted to the jury.

Since the contract of sale specified the place of delivery, namely, on board cars at Marshfield station, a place four or five miles from the mill, until the chair-stock was placed on board cars at that station by the vendor something remained to be done by him to complete a delivery under the contract, and title to the property did not vest in the defendant. *Brunswick-Balk Collender Co.* v. *Herrick*, 63 Vt. 286. It remains to be considered whether, as claimed by the plaintiff, there was evidence tending to show a waiver by the defendant of a delivery at the specified place, and an acceptance by him of the property under the contract at the barn to which it was removed. When the chair-stock was cut ready for shipment in December, 1907, and the defendant notified thereof, he told Lamberton in effect that it could not then be shipped, and the reason why. The exceptions go on to state, "that the chair-stock remained in the mill during the remainder of the winter and until the spring of 1908 subject to the orders of the defendant." This, however, means no more and has no other tendency, than that it remained

there ready to be delivered on notice from the defendant. It
has no tendency to show a waiver by him of the specified place
of delivery, or an acceptance of the property. The only other
act of the defendant relied upon as evidence of such waiver and
an acceptance of the property was in the following spring, some
months later, when Lamberton asked him over the telephone,
"why not put it (chair-stock) down in the barn under cover?"
and defendant replied, "All right, put it down there." The case
does not state who owned the barn; yet, as the burden of proof
is with the plaintiff, it will be inferred that it was owned by
Lamberton, the same as the mill. That the barn was near the
mill fairly appears from the facts that the chair-stock "was
destroyed in a fire at the Lamberton mill," and that it was in
the barn when so destroyed. So far as appears, the full posses-
sion and control of the chair-stock was in Lamberton after
its removal to the barn, the same as before. There was nothing
in the conversation over the telephone indicating an intention
by either party to have such removal constitute a delivery of
the property, nor that the defendant intended to accept the
property at the barn, thereby waiving the provision of the con-
tract requiring its delivery at the place specified four or five
miles away, involving work and transportation at no inconsider-
able expense. Giving the conversation the most favorable con-
struction to the plaintiff it amounted to no more than an assent
by the defendant to the removal of the chair-stock to the barn
to be housed until delivered according to the contract, instead
of remaining in the mill where it was. We are of the opinion
that in the ruling of the court on this phase of the case, there
was no error. See *Brunswick-Balk Collender Co.* v. *Herrick,*
cited above; *Kitson Machine Co.* v. *Holden,* 74 Vt. 104.

*Judgment affirmed.*