(64 Misc. Rep. 407.)

MAUPAI v. JACKSON et al.

(Supreme Court, Special Term, New York County. August 16, 1909.)

1. PARTY WALLS (§ 9*)—AGREEMENTS RUNNING WITH LAND.

A party wall agreement, providing that the expense of repairing and rebuilding the wall shall be borne equally by the parties, and that the agreement shall be perpetual and construed as an agreement running with the land, creates a privity of contract, is perpetual in its nature, and runs with the land; the provisions relating to the future repair and rebuilding of the wall, and not to the building of the original wall.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 49; Dec. Dig. § 9.*]

2. PARTY WALLS (§ 8*)—AGREEMENT.

A party wall agreement, providing that each party shall contribute equally if it shall become "necessary" to repair and rebuild, cannot be defeated by either party saying it is not necessary to repair or rebuild.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. § 36; Dec. Dig. § 8.*]

3. PARTY WALLS (§ 9*)—MODIFICATION OF AGREEMENT—NECESSARY PARTIES.

Mortgagees of land affected by a party wall agreement are necessary parties to a modification of it.

[Ed. Note.—For other cases, see Party Walls, Dec. Dig. § 9.*]

4. MORTGAGES (§ 133*)—PROPERTY COVERED—EASEMENT.

A mortgage of a lot also covers the easement which it has in an adjoining lot created by a party wall agreement.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 133.*]

5. VENDOR AND PURCHASER (§ 135*)—RIGHT TO REFUSE TITLE.

A purchaser of a lot is justified in refusing to take title; it being impossible for the vendor on the day for passing title to perform, according to its terms, the contract providing for the cancellation of certain terms of a perpetual party wall agreement affecting that lot and the one adjoining, and the consent of the mortgagees of the lots to the cancellation not having been obtained.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 257; Dec. Dig. § 135.*]

6. SPECIFIC PERFORMANCE (§ 115*)—PLEADING—COUNTERCLAIM FOR SPECIFIC PERFORMANCE.

A plea for specific performance is a counterclaim available in a proper case to the vendor in an action by the purchaser to recover the deposit paid on a contract for purchase of lands.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 115.*]

7. SPECIFIC PERFORMANCE (§ 99*)—DELAY IN PERFECTING TITLE—EXCUSE.

Defendant, who, in an action by a purchaser to recover the deposit on a contract for purchase of a lot, because a party wall agreement affecting the land was not canceled at the time for passing title, as agreed, the consent of the mortgagees of that and the adjoining lot affected not having been obtained, seeks to have the contract specifically performed because a year after the time for passing title, and after the trial of the action, the mortgages were paid, rendering the consent of the mortgagees unnecessary, cannot, as an excuse for having made no effort to obtain consent of the mortgagees, urge that the consent for cancellation prepared by plaintiff was ineffectual; no such objection having been made at the time for passing title, and it being presumed, if the objection had then been made, plaintiff could have had an unobjectionable consent prepared.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 99.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. SPECIFIC PERFORMANCE (§ 90*)—PERFECTING TITLE AFTER LAW DAY—DILIGENCE.

A contract for sale of a lot required a party wall agreement affecting such lot and another lot to be canceled. All that was necessary for the cancellation at the time for passing title was the consent of the mortgagees of the lots or satisfaction of the mortgages. The vendor made no effort to obtain either, but a year after the time for passing title, and after the trial of the action of the purchaser to recover his deposit, the mortgages were paid. *Held*, that the first prerequisite to right of a vendor to specific performance, where his title is cleared after time for passing title, that he should have used diligence to remedy the defect, was lacking.

[Ed. Note.—For other cases, see Specific Performance, Dec. Dig. § 90.*]

9. VENDOR AND PURCHASER (§ 179*)—CONTRACT—COMPLIANCE BY PURCHASER.

Plaintiff, who contracted for purchase of a lot of defendants, and as part payment agreed to execute and deliver, or cause to be executed and delivered, a deed of certain lots, and to deliver or cause to be delivered certain bonds, complied with the contract, though the lots and bonds were not owned by him, but by his wife, when, at the time for passing title, he tendered to defendants a proper deed of the lots executed by his wife and tendered the bonds.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 179.*]

10. SPECIFIC PERFORMANCE (§ 100*)—CHANGE IN CIRCUMSTANCES.

There is such a change in the circumstances of the parties as to render it inequitable to grant defendants specific performance of plaintiff's contract for purchase of a lot of them, where at the time for passing title they had not performed their agreement to have a party wall agreement affecting the lot canceled, the necessary consent of the mortgagees of that and another lot, or the satisfaction of the mortgages, not having been obtained; and 11 months after the time for passing title, when such consent had not been obtained, plaintiff in good faith disposed of property, which he was to give in part payment having no intimation that the mortgages would be paid, as they were shortly thereafter, or that defendants would claim specific performance, they having at all times contended the consent of the mortgagees was unnecessary.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 305; Dec. Dig. § 100.*]

11. VENDOR AND PURCHASER (§ 339*)—RECOVERY OF DEPOSIT BY PURCHASER—TENDER.

The vendor having expressly refused to comply with the terms of the contract for sale, it was not necessary for the purchaser, to be entitled to recover his deposit money, to have been ready and willing to perform and to have demanded performance by the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 994, 995; Dec. Dig. § 339.*]

Action by Frederick P. Maupai against George G. Jackson and another. Judgment for plaintiff.

Moss & Feiner (Benjamin F. Feiner and Fred O. Nelson, Jr., of counsel), for plaintiff.

James B. Sheehan, for defendants.

GIEGERICH, J. The action is to recover the deposit paid on entering into a contract for the purchase of certain property known as Nos. 208 and 210 West Seventeenth street, borough of Manhattan, New York City, and for the expenses incurred by the plaintiff in connection with the examination of the title to the premises in suit. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract was subsequently modified as hereinafter stated. The complaint alleges, among other things, that on the 11th day of March, 1908, the date to which the closing of the title was adjourned, the plaintiff was ready, willing, and able to perform the contract as modified, but that the defendants were unable to perform their part of the contract. The answer sets up a denial of the material allegations of the complaint, that on said March 11, 1908, the defendants were ready, willing, and able to perform all the conditions of the modified contract, alleges a proper tender to the plaintiff of a good conveyance in accordance with the terms of such contract, the refusal to perform by the plaintiff, and by way of counterclaim prays for a decree of specific performance. By the contract in question, which was entered into on the 16th day of November, 1907, the defendants agreed to sell to the plaintiff the premises above mentioned, free and clear of all incumbrances, for the sum of $53,000, which was to be paid as follows:

"On the execution of the agreement, $25.00; on receipt of report of satisfactory title, $4,975.00; on delivery of deed, which shall be in not less than three months and not more than six months, ten Union Pacific R. R. bonds, 1st, at $120, $12,000.00; cash, $6,500.00; bond and mortgage, $30,000.00—$53,-500.00."

The contract was modified by the parties by an agreement in writing made on February 27, 1908, whereby, among other things, the terms were charged so that the closing of the title was fixed for March 9, 1908, at the office of the Lawyers' Title Insurance & Trust Company, No. 37 Liberty street, New York City, and the purchase price made payable as follows:

"On the execution of said agreement of November 16, 1907, the receipt of which has already been acknowledged, $25.00; by executing and delivering, or causing to be executed and delivered, a deed of nine certain lots between Adams street and Fifteenth street, in the city of Hoboken, known as lots 24 to 32, inclusive, in block 129 on a certain map of property situate at Hoboken, Hudson county, N. J., belonging to the estate of John G. Coster, deceased, $8, 500.00; by delivering or causing to be delivered to said parties of the first part five certain first mortgage bonds of Hackensack Water Company, $4,-600.00; by taking title to said premises, subject to a mortgage, now a lien thereon, for that amount, held by the Irving Savings Institution, bearing interest at five per cent. per annum, $30,000.00; in cash or certified check on the closing of title, $10,375.00—$53,500.00."

The modified contract also provided:

"(2) Whereas said contract recites that said premises are to be free and clear of all incumbrances, and it appears from the title report, No. 150,790 of the Lawyers' Title Insurance & Trust Company, that said premises are subject to a party wall agreement, recorded in Liber 1160 of Conveyances, at page 249, it is stipulated and agreed that the party of the second part will take title to the said premises subject to said agreement, provided the fourth and fifth clauses of said agreement as set forth in the title report No. 150,790 of the Lawyers' Title Insurance & Trust Company, are canceled by a proper instrument to that effect."

Thereafter, at the request of the defendants, the closing of the title was adjourned to March 11th at 3 p. m. at the same place. The party wall agreement above referred to was made between one Michael J. Newman and one Jane A. Knapp, and is dated June 20, 1870, and was recorded on December 8, 1870, in the office of the register of the

county of New York, in Liber 1160 of Conveyances, p. 249, and contains, among others, the following clauses:

"Fourth. And the parties hereto further mutually agree and covenant that if it shall hereafter become necessary to repair or rebuild the whole or any part of said wall the expense of said repairing shall be borne equally by them, and that whenever the said wall or any part of it shall be rebuilt it shall be erected on the same spot where it now stands and be of the same size and of the same or similar materials and of like quality.

"Fifth. It is hereby further mutually agreed that this agreement shall be perpetual and at all times construed as a covenant running with the land to bind the heirs, executors, administrators, and assigns of the respective parties; but that no part of the fee of the soil upon which said wall is erected shall pass to or become vested in either of the parties other than as now owned by them respectively."

A mortgage upon the premises in suit was subsequently given by the defendant Tag to the Irving Savings Institution for $30,000, bearing date May 26, 1899, which was recorded in the office of the register of the county of New York on May 31, 1899. A second mortgage upon the premises in question was given on the same day by said defendant Tag to one Herman Meyers for $1,800, which was recorded in said register's office on the same day. A purchase-money mortgage upon the adjoining premises was given by one John E. Jenny to Susan B. Nelson for $22,000, which bears date of November 1, 1905, and was recorded in said register's office on the same day. These mortgages were liens upon the premises above mentioned when the parties met to close the title; but they were subsequently satisfied of record, as hereafter shown. The owners of the premises in suit and those adjoining on the west, and their wives, subsequently entered into an agreement, dated March 9, 1908, whereby they severally covenanted and agreed:

"That the aforesaid clause of said party wall agreement numbered fourth and so much of the clause of same numbered fifth as reads as follows: 'It is hereby further mutually agreed that this agreement shall be perpetual and at all times construed as a covenant running with the land to bind the heirs, executors, administrators and assigns of the respective parties'—and hereinbefore set forth, be, and the same hereby are, forever canceled, extinguished and annulled, and that both pieces or parcels of land hereinbefore described be, and the same hereby are, forever released from the operation thereof, and from all obligation and liability thereunder."

The mortgagees of the premises in suit and those adjoining on the west did not join in the execution of this agreement, and, as seen, the plaintiff refused to take title by reason thereof. When the parties met on the adjourned day to close the title, the defendants tendered to the plaintiff a full warranty deed of the premises in question, a satisfaction piece of the second mortgage upon the lands in controversy, and the fees to discharge the same of record, and the modification of the party wall agreement and the fees to record the same, and demanded the consideration. The plaintiff tendered to the defendants a certified check for $10,000, $375 in cash, a deed to the so-called Hoboken lots, and five first mortgage bonds of the Hackensack Water Company; but he refused to take title because the fourth and fifth clauses of the party wall agreement had not been canceled by a proper instrument to that effect, the mortgagees of the premises in question and those adjoining on the west not having consented to the canceling of the same. As already shown, the party wall agreement contained a clause to the ef-

fect that the expense of repairing and rebuilding the party wall should be borne equally by the parties, and such clause is accompanied by a further one that such agreement "shall be perpetual and at all times construed as a covenant running with the land to bind the heirs, executors, administrators and assigns of the respective parties." As the clauses in question relate to the future repair and rebuilding of the party wall, and not to the building of the original party wall, they created a privity of contract, and the agreement is perpetual in its nature and runs with the land. Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. 1097, 17 L. R. A. 409; O'Neil v. Van Tassel, 137 N. Y. 297, 33 N. E. 314; Oppenheimer v. Knepper Realty Co., 50 Misc. Rep. 186, 98 N. Y. Supp. 204; Sebald v. Mulholland, 155 N. Y. 455, 50 N. E. 260.

The Mott and Sebald Cases are cited with approval in Crawford v. Krollpfeiffer, 195 N. Y. 185, 88 N. E. 29, which case is much relied on by the defendants. There, however, the covenant to rebuild provided that the plaintiffs should forthwith construct a party wall, thus providing for a present and existing situation, and it was held that such covenant was personal and did not run with the land. The court was careful to point out in its opinion the distinction between personal contracts relative to party walls and covenants with reference thereto running with the land, and which may be summarized as follows: Where the covenant provides for the repairing or rebuilding of a party wall in the future, and the expenses thereof are to be borne equally between the parties, their heirs and assigns, it is perpetual and runs with the land; while, on the other hand, an agreement to contribute towards the construction of the original party wall is personal and does not run with the land.

The defendants contend that, because the fourth clause of the party wall agreement provides that each party shall contribute equally if it shall become necessary to repair and rebuild, there is no obligation to repair or rebuild, since it is within the power of either owner to defeat the agreement by saying that it is not necessary to repair or rebuild. This argument is wholly untenable. On the contrary, the word "necessary," as used in the party wall agreement, was construed adversely to the contention of the defendants in Hart v. Lyon, 90 N. Y. 663, which was cited in the Crawford Case. There the contract, after the provision as to the building of the wall, contained the following covenant:

"And the said parties hereto do hereby mutually covenant and agree for and with themselves and their respective heirs and assigns that if it shall become necessary to repair or rebuild the whole or any part of said party wall the expense of such repairing or rebuilding shall be borne equally by the parties hereto, their respective heirs and assigns."

The court said:

"It is evident it was the plain import of the instrument that the portion which bound the heirs and assigns should be construed as perpetual and as a covenant running with the land, while the other, being personal, could not be so regarded."

The defendants claim, however, that the mortgagees were not necessary parties to the agreement modifying the party wall agreement,

and that hence it was not necessary for them to join in the execution thereof. It was held in Erie County Sav. Bank v. Roop, 80 N. Y. 591, 598, that the mortgagor could not by any conveyance or agreement with any person, without the consent of the mortgagee or those holding under him, diminish or alter his estate, interest, or right in the land mortgaged. The defendants, nevertheless, in reliance upon the decisions in Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287, and Volz v. Steiner, 67 App. Div. 504, 73 N. Y. Supp. 1006, contend that the mortgagees' consent to the cancellation agreement is not necessary, and that the case of Erie County Sav. Bank v. Roop, supra, is not to the contrary. In the Higgins Case there were cross-easements in favor of each property against the other. The vendor was the owner of both pieces of property which the easement affected, and the objection to the title was not raised until the day it was to be passed, at which time the vendor offered to release the other property from the alleged easement. It was urged upon the trial that the defendant was unable to do so because there was a mortgage of $8,000 upon the adjoining property, so that a release by the defendant would not have been effective, and the court in passing upon the point said (page 472 of 155 N. Y., page 288 of 50 N. E.):

"No such objection to the title was mentioned by the plaintiff when it was to be passed. If it had then been raised, there is little doubt but the defendant would have procured any release necessary to confer upon the plaintiff an absolute title to the property purchased free from all incumbrances. The plaintiff, on the law day, having made specific objections to the title, which were unfounded, could not subsequently raise a new objection, even if it was valid where, as in this case, it was one that could have been obviated by the defendant."

It will thus be seen that it was not held in the case last cited that the failure of the mortgagee to consent to the release of the easement was not a proper objection to the title, but it was held that such question was not raised at the proper time, and that if it had been the vendor could probably have overcome it. In the Volz Case the deed tendered by the plaintiff to the defendant conveyed the premises according to the description contained in the contract, and it was not disputed but that the plaintiff had a good title to the land included within such description; but the defendant claimed that the easterly wall of the building in suit encroached upon the premises adjoining on the easterly side and belonging to a person other than the plaintiff to the extent of about 100 feet 8½ inches in depth by 2¼ inches in width. The deed did not purport to convey the fee of the land so encroached upon, and the issue presented by the pleadings was limited entirely to such encroachment. At the time fixed for closing the title, the vendor tendered to the vendee an instrument by which the owner of the adjacent property granted to the vendor the right to use the strip encroached upon "during the period of the existence of said structures as they now stand." Objection was made that the mortgagee of the land so encroached upon was not bound by such instrument, and the court, in passing upon the same, at page 510 of 67 App. Div., page 1010 of 73 N. Y. Supp., said:

"It is true that the mortgage covered this 2½ inches, and it is equally true that the mortgagee would not be bound by this covenant or grant. There was

presented the remote contingency that if the owner of the property adjoining on the east failed to pay the mortgage if the mortgage should be foreclosed, and the purchaser at such foreclosure sale should acquire the whole title to the mortgaged premises, having made the owner of the premises to be conveyed by the plaintiff a party, the fee of this 2½ inches of land would vest in the purchaser at such sale, free from the obligations or rights covered by this grant; but we are now dealing with an objection to the title which was sufficient to make this title unmarketable at the time of the conveyance. It is not contended that this mortgage was then being foreclosed, and the mortgagee had simply a lien upon the premises. The utmost that can be said to impeach this grant is that it was subject to such a lien. The grantors in this grant were estopped from commencing any action or proceeding to interfere with the plaintiff's or his grantee's right to maintain this building upon the premises in question, and from commencing any action for damages against either the plaintiff or his grantee. As a practical question, could any person who acquired a title to this 2½ inches under the foreclosure of this mortgage upon the premises have maintained any action to recover the possession of such 2½ inches, or for damages, by reason of the erection of this wall upon the said property? So far as commencing any action to recover such property is concerned, that question is set at rest by section 1499 of the Code of Civil Procedure. It is there provided that an action to recover possession of premises cannot be maintained 'where in any city the real property consists of a strip of land not exceeding six inches in width upon which there stands the exterior wall of a building erected partly upon said strip and partly upon the adjoining lot, and a building has been erected upon land of the plaintiff abutting on the said wall, unless said action be commenced within one year after the completion of the erection of such wall, or within one year after the first day of September, eighteen hundred and ninety-eight.' If this section is valid as not violating any provision of the Constitution, it is perfectly apparent that no action could be maintained by any person who should acquire title to this property through a foreclosure of the mortgage. The building having been erected prior to the passage of this act, the time limited within which an action to recover possession of this strip of land could be commenced expired on the 1st day of September, 1899, prior to the execution of the contract. * * * Counsel for the defendant also objects upon the ground that, as this title was to be closed upon the last day of the time within which an action for damages could be commenced, such an action might have been commenced, and therefore the defendant was not bound to subject himself to such a liability; but there is nothing in such an objection, for, in the first place, the owners of the land on the east—the only ones who could commence such an action—had by their grant given the plaintiff the right to maintain the building. They certainly could not, in the face of that grant, have commenced an action for damages on account of the erection of the wall. Neither could the mortgagee have maintained such an action, as he was not damaged by the erection of the building or the encroachment, and as no foreclosure was pending the year would elapse before a purchaser at a sale on a foreclosure of this mortgage could obtain title."

It will be noted that the foregoing case does not pass upon the question involved in the case at bar, but merely holds that although the mortgagee would not be bound by the covenant or grant of the strip of land encroached upon, without its consent, the existence of the mortgage was not sufficient ground to entitle the vendee to reject the title because any person acquiring title under a sale had by virtue of a judgment of foreclosure and sale would, under the provisions of section 1499 of the Code of Civil Procedure, be barred from maintaining an action to recover such strip by reason of the fact that it did not exceed six inches in width, and more than a year had elapsed since the exterior wall of the building had been partly erected upon such strip. The defendants further urge that the estate released by the modification of the party wall agreement was not covered

either by the mortgage given by them to the Irving Savings Institution or by the mortgage given by the said John E. Jenny to the said Susan B. Nelson. It is argued in support of this proposition that the mortgages in question described only the property which the mortgagors owned in fee respectively. While this is so, it is equally true that such ownership in fee carried with it the right to the easement in the adjoining land covered by said party wall. In Gerard on Titles to Real Estate (5th Ed., as revised and enlarged by Robert Ludlow Fowler, Esq., and James H. Hickey, Esq.), at page 848, it is said:

"As a general rule, adjoining properties have each an easement in the land of the other covered by a party wall, and the title of each owner is qualified by the easement to which the other is entitled. This right to the mutual easement is an appurtenance passing with the title to the land. The right exists so long as the wall continues sufficient for the purpose and the respective buildings remain in condition to need and enjoy the support."

The mortgages in question therefore covered the easement created by the party wall agreement. While it is true, as stated in the defendant's original brief, that the party wall agreement was made and recorded some years before the giving and recording of the mortgages in suit, and that the latter were subject to the incumbrance created by the party wall agreement, the mortgagees nevertheless acquired a lien upon all the rights and benefits of the easement which the mortgagor obtained in the adjoining premises by virtue of such party wall agreement. It should be borne in mind that the plaintiff does not raise the objection that the party wall agreement is an incumbrance on the adjoining premises, No. 212 West Seventeenth street; but he does make the point that it is an incumbrance on the premises in suit, Nos. 208 and 210, by reason of the latter's subserviency to No. 212. The plaintiff urges that under the provisions of the second clause of the modified contract he only agreed to take title to said premises subject to the party wall agreement, provided the fourth and fifth clauses thereof were canceled by a proper instrument to that effect. Such clause, however, must be read in connection with the fourth clause of the modified contract, which provides that no objection to party wall agreements is to be raised on the closing of title provided the same are not perpetual in their nature. As above shown, the party wall agreement is perpetual, and, in my judgment, the plaintiff was therefore only bound to take the property in case the said clauses were canceled by the mortgagees, and since they were not it was impossible for the defendants to perform the contract according to its terms on the day on which the title was to be passed. The plaintiff did not therefore unjustifiably refuse to take title, as claimed by the defendants.

Although the defendants were unable to convey a marketable title on the law day, they nevertheless insist that since the title has now been perfected specific performance should be decreed in accordance with their prayer for relief. That the plea for specific performance is a counterclaim available in a proper case to the vendor in an action brought by the purchaser to recover the deposit paid on a contract to convey lands is sustained by authority (Moser v. Cochrane,

107 N. Y. 35, 13 N. E. 442; Bloomgarden v. Hoffmann, 116 App. Div. 719, 102 N. Y. Supp. 20), and the question thus arises whether or not it shall be decreed in this case. The action was begun on March 17, 1908, and tried on March 3, 1909. It appears that the mortgages upon the premises in question were satisfied of record in the month of January, 1909, and the mortgage upon the adjoining premises was satisfied on March 18, 1909, more than a year after the time set for closing the title and over two weeks after the trial, which was subsequently reopened in order to enable the defendants to introduce further proof. The rule, so far as applicable to the present case, is stated in Baumeister v. Demuth, 84 App. Div. 394, 399, 82 N. Y. Supp. 831, 834, affirmed without opinion, 178 N. Y. 630, 71 N. E. 1128, as follows:

"The respondent now contends that if the plaintiff's title was not good at the time fixed for performance he is under no obligation to complete the purchase, even though the title has been perfected since. In an action at law that would be true, but it is the practice in equity to require specific performance if the title is good at the time of the trial, even though defective at the time fixed for performance of the contract, where the vendor has, upon discovering defects, exercised diligence in remedying the same, if there has been no change in the circumstances or position of the parties by which performance will become inequitable, or will be to the substantial prejudice of either party, or where nothing has occurred to create an estoppel."

The plaintiff urges that from the day fixed for the closing of the title the defendants did nothing whatever to remedy the defect complained of, and that for aught that appears it would not have been cured but for the payment of the mortgage upon the adjoining property one year after the law day and two weeks after the trial of this action; such payment, so far as the record discloses, having been made without the act or procurement of the defendants. The defendants, on the other hand, assert in the final brief submitted on their behalf that they could not have satisfied the mortgage upon their own property until it became due, nor the one upon their neighbor's premises. Under the terms of the modified contract the plaintiff was not required to take title unless the said clauses of the party wall agreement were canceled "by a proper instrument to that effect." As the owners of the mortgaged property had already, by an instrument in writing, agreed to cancel the said clauses of the party wall agreement, all that was required in order to make the cancellation agreement effectual was the consent of the mortgagees, or the satisfaction of the mortgages upon the property. The defendants, however, made no effort, so far as the evidence shows, to obtain either. They now claim that the consent prepared on behalf of the plaintiff was insufficient to cancel the clauses of the party wall agreement above referred to. No such objection was made when the parties met to close the title. If it had been raised, the plaintiff presumably could have had one prepared which would have obviated the objection. The defendants have therefore failed to establish the first prerequisite to a specific performance of the modified contract.

The plaintiff claims that since the time fixed for the closing of the title there has been such a change in his circumstances as would render it inequitable to decree specific performance. It appears from

the stipulation of the parties, made after the case was reopened, that the plaintiff never had title to the so-called "Hoboken lots"; but when the modified contract was entered into his wife was the owner thereof, and that she disposed of such lots in February, 1909, for $9,330. It was further conceded that the plaintiff did not at any time own the five first mortgage bonds of the Hackensack Water Company, which, as seen, he agreed to give as part of the purchase price, and that they were sold by him in or about the early part of February, 1909, for $4,350, and the "defendants had no knowledge or information concerning the disposal of the properties aforesaid at the time of the trial of this action, but did know the Hoboken lots were owned by plaintiff's wife." The modified contract, however, did not require the plaintiff to be the owner in his own right of the lots and bonds in question, but, as already shown, it required him to execute and deliver, or cause to be executed and delivered, a deed of the lots, and to deliver, or cause to be delivered, the bonds. The plaintiff therefore strictly complied with the terms of the contract when on the law day he tendered to the defendants a proper deed executed by his wife of such lots and tendered the bonds, although he was not the absolute owner thereof.

The defendants insist that the plaintiff acted in bad faith in disposing of such lots and bonds; but nothing has appeared in the case which supports such contention. The answer for a second separate defense, and by way of a counterclaim, alleges that at the time and place fixed for the closing of the title, the defendants were ready, willing, and able to perform all the terms and conditions of the modified contract by them to be performed, and are still ready, willing, and able to do so, and that they tendered performance to the plaintiff and demanded performance from him, and that he refused to perform. There is not the slightest intimation in the answer that the defendants intended to make any other claim upon the trial than that the clauses of the party wall agreement in suit were not perpetual in their nature, and that the title was marketable, although the mortgages were still in force, and the mortgagees had not consented to the cancellation of such clauses. Nor was there any proof adduced showing that the plaintiff, at any time prior to the disposal of such lots and bonds, knew that either of the mortgages had been satisfied, or that the defendants or the owners of the land adjoining, intended to pay the mortgages on their respective lands, and that the defendants would demand specific performance. On the contrary, the defendants upon the trial, and ever since, have insisted that the party wall agreement was a personal contract, and did not run with the land, that the consent of the mortgagees to the cancellation of such agreement was not necessary, and that the title was marketable when a deed of the property in suit was tendered by them at the time and place set for the passing of the title. In view of all this, it cannot be said that the sale of the said lots and bonds about 11 months after the law day was made in bad faith. The defendants also charge the plaintiff with bad faith because he did not inform them of the disposal of the lots and the bonds; but, in view of the attitude assumed by them throughout the entire transaction that the title was market-

able, and their refusal to take any steps whatever to cure the defect complained of, they should not be heard to complain if by their conduct they led the plaintiff to believe that they would never be able to perform.

The evidence sufficiently discloses that there has been such a change in the circumstances of the parties as would render performance inequitable or prejudicial. The defendants argue that there was no tender of performance on the part of the plaintiff; but the evidence not only shows that a tender was made, but that on the day fixed for closing the title the plaintiff also demanded performance, rescinded the contract, and shortly after brought this action. No negotiations, so far as the record discloses, were had after the law day. Even if I am in error as to the record upon these points, proof of the plaintiff's readiness and willingness to perform, and of his demand upon the defendants for performance on their part, is not necessary in view of the defendants' express refusal to comply with the terms of the modified contract. Ziehen v. Smith, 148 N. Y. 558, 42 N. E. 1080.

The plaintiff is therefore entitled to judgment for $25, the amount paid on signing the contract, with interest, and $253.75, expenses incurred for examining the title and for services rendered in connection with the objections raised as to its marketability, and to judgment dismissing the counterclaim upon the merits, without costs to either party as against the other. The form of the decision and judgment to be entered hereon will be settled upon the usual notice.