## EASEMENT IN HALLWAYS AND TOILET FACILITIES UPHELD.

Superior Court of Cincinnati.

THE WESTERN EDUCATION SOCIETY v. FRANK HUNTINGTON AND MARY KINSELLA HUNTINGTON.

Decided, February 11, 1914.

*Easements—Nature of and Mode of Creation—Extent to Which They Will be Protected—Easement Created by Mortgage—Common Law Doctrine as to Mortgages Prevails in Ohio—Mortgage Conveys Not Only the Naked Title But Necessary Incidents Thereto—Application of the Rule Where Mortgaged Premises and the Servient Tenement Were Continuously the Property of the Mortgagor—Incorporeal Hereditaments Appurtenant.*

1. Although a mortgage upon real estate is primarily a security for the payment of a debt or the performance of some other obligation, yet it is, in addition thereto, a conveyance of the estate upon condition, giving to the mortgagee the benefit of the doctrines applicable to *bona fide* purchasers for value.
2. Where an owner of a piece of property erects thereon two houses the first of which is accessible only through the second, the severance of the joint ownership by mortgage of the first will be as effective to pass the easement to the mortgagee as an absolute conveyance by deed.
3. Prior to 1885 H constructed two houses on a lot owned by him. The only means of ingress and egress to one house was through the hallways of the other, and the toilet facilities to be used by the tenants of both were located entirely on the latter premises. In 1885 he mortgaged the former to plaintiff, the premises remaining in the same condition up to the present time. In 1910 H deeded the latter house to K and shortly thereafter plaintiff foreclosed its mortgage on the other and purchased it at foreclosure sale. K then proceeded to close up the passageways and toilets in her house which had been used by the tenants of plaintiff's house.

*Held:* That an easement in these privileges, which were continuous, apparent and reasonably necessary to the use and enjoyment of plaintiff's house, passed to plaintiff by virtue of the mortgage of 1885, and could not be disturbed by defendants.

*Thornton M. Hinkle* and *Frederick W. Hinkle,* for plaintiff.
*Simeon M. Johnson,* contra.

OPPENHEIMER, J.

Some time prior to June 9th, 1885, defendant Frank Hunting-ton, being then the owner of lots 99 and 100 on the plat of subdivision of lands in Cincinnati, Ohio, made by William C. Huntington, constructed two adjoining houses upon them known as 129 and 131 Saunders street, Mount Auburn. These houses fronted 22½ feet each on the south side of Saunders street and extended southwardly 90 feet to Edinboro Place, which street is about 50 feet below the level of Saunders street. The upper three stories front on Saunders street, from which there is a separate entrance to each house. The lower three stories front on Edinboro Place, the one entrance to them being through No. 131. The entrance to the lower floor is by means of a hallway which opens directly into Edinboro Place, and which is situated along the west side of No. 131. The access to the next floor is by a stairway on the outside and to the east of No. 131, which stairway leads to a porch from which a doorway opens into a hall which runs from the east side of No. 131 to a hall on the west side thereof which corresponds with the hallway on the first floor. The access to the third floor is by way of the same out-side stairway and porch through a door to a flight of steps leading to a hall in the third floor which is situated on the west side of No. 131 and corresponds with the hallway on the first floor. From the several hallways along the west side of No. 131, doors open through a partition wall between the two build-ings into the rooms which constitute the several apartments of No. 129.

The water supply for both houses is through the pipes and meter located in No. 129. The toilets and water closets which are used by the tenants of both houses are situated on the east side of No. 131, and are accessible only through the halls of that building. Both houses are rented in apartments or flats of several rooms to various tenants. The buildings, so far as the several passageways referred to are concerned, are in the same condition now as when they were originally constructed, there being no entrance to the lower floors of No. 129 except through No. 131 as heretofore described.

On June 9th, 1885, Frank Huntington, who was then un-
married, executed a mortgage covering the entire property known
as No. 129 Saunders street to plaintiff, the consideration therefor
being a loan of $4,000, payable five years after date.   This mort-
gage is in the usual form, covering "all the estate, title and
interest of said Frank Huntington either in law or in equity, of,
in and to the said premises; together with all the privileges and
appurtenances to the same belonging, and all the rents, issues
and profits thereof; to have and to hold the same to the only
proper use of the said Western Education Society, its heirs and
assigns forever.''·   There then follow the usual covenant against
incumbrances, and the defeasance clause.

On May 26, 1886, Frank Huntington executed another mort-
gage in favor of plaintiff covering the same property, the con-
sideration therefor being a loan of $2,500, payable three years
after date.   This mortgage contains the same provisions as the
preceding mortgage excepting that in the warranty against in-
cumbrances said preceding mortgage is excepted.

On August 20th, 1910, Frank Huntington, who was still un-
married, executed and delivered to Mary Kinsella a deed of
general warranty covering lot 100, together with the house
thereon, known as No. 131 Saunders street, the consideration
therefor being one dollar and a marriage contract which had
been previously entered into betwen the grantor and the grantee.
This deed covered a number of pieces of property which has
belonged to the grantor, and contained the usual clauses except
a covenant against incumbrances.

On September 21, 1910, Frank Huntington was duly adju-
dicated bankrupt in the United States District Court for the
Southern District of Ohio, Western Division, and Henry Straus
was appointed trustee of his estate.   Shortly thereafter the West-
ern Education Society filed in the bankruptcy case a cross-peti-
tion for the foreclosure of its mortgage on No. 129 Saunders
street, and at the conclusion of the proper proceedings the prop-
erty was sold at foreclosure sale and bought in by the Western
Education Society to protect its own claim, which then aggre-
gated more than $6,800.   A trustee's deed was accordingly ex-

ecuted by Henry Straus, trustee in bankruptcy, and delivered to the Western Education Society.

On June 16, 1911, Frank Huntington and Mary Kinsella Huntington, who had then intermarried, executed and delivered to plaintiff a quit-claim deed covering the same property, and containing this clause:

"To have and to hold the same, with all the privileges and appurtances thereunto belonging, to said grantee, its successors and assigns forever."

The purpose of this quit-claim deed was to complete plaintiff's chain of title, and the consideration therefor was recited to be "one dollar and other valuable considerations, including the release of the grantor (*sic*) from all personal liability on the respective notes secured by the mortgages set forth below," and the two mortgages heretofore referred to are then recited.

All these conveyances were recorded in accordance with law.

Since the date of the transfer of the house at No. 131 Saunders street to Mary Kinsella, Frank Huntington has been acting as her agent in the management of the property and the collection of the rents. At all times prior to the execution of the deed from the trustee in bankruptcy to plaintiff, Frank Huntington had also collected the rents for No. 129 Saunders street and had paid all charges upon the property, including the interest upon the mortgages executed to plaintiff.

The petition alleges, and it is admitted to be true, that defendant Mary Kinsella Huntington now threatens to cut off the passageways to the lower floors of No. 129 which front on Edinboro Place as hereinbefore described, and to deprive its tenants of the use of the toilet facilities and water closets in No. 131. A temporary restraining order was issued, and plaintiff now seeks to have it made permanent, while defendants ask to have it dissolved.

It is urged on plaintiff's behalf that as the property was in its present condition with respect to passageways and privileges at the time when the mortgage of June 9th, 1885, was executed, and as such privileges were at all times open and visible, plaintiff

is entitled to their benefit without let or hindrance from defendants. On the other hand, it is urged by defendants that as plaintiff was merely a mortgagee, and as the mortgagor at all times remained in possession and control of both pieces of property, no easement was ever created in favor of plaintiff, but at most only a privilege which was revocable at will; that the first severance of the joint ownership of the properties took place when the deed of August 20th, 1911, was executed and delivered to Mary Kinsella, until which time no adverse possession could be said to have existed; and that defendant Mary Kinsella Huntington may therefore close up all passageways leading from her property to that which has been acquired by plaintiff by virtue of the foreclosure proceedings.

These respective contentions raise directly the question whether an easement was in fact created in favor of plaintiff when the mortgage of June 9th, 1885, was executed and whether, if such easement was actually created, it exists in favor of plaintiff as against defendant Mary Kinsella Huntington. This necessitates an investigation as to the nature and mode of creation of easements, and the extent to which they will be protected when created.

The law of real property recognizes three kinds of so-called incorporeal hereditaments: first, such as are *appendant* to corporeal hereditaments; second, such as are *appurtenant* to them, and third, such as exist *in gross*. We are concerned only with the second class. An incorporeal hereditament appurtenant may be defined for our purposes as a right, privilege or easement annexed to the ownership of real property. At common law it was said to lie in a grant (as distinguished from corporeal hereditaments, which were said to lie in livery), because livery of an intangible right being impossible, it would pass by simple deed or grant. The right thus attached to real property, which is most commonly known, is the right-of-way or passage over the property of another. This right may be created either by an express deed of grant, or by prescription which presupposes the existence of a grant; and when thus created or annexed to land, it will pass by a conveyance of the land to which it pertains, without specific

mention. *Coke on Litt.*, 121 B; *Kent* v. *Waite*, 10 Rich., 138; *George* v. *Cox*, 114 Mass., 382; *Newman* v. *Nellis*, 197 N. Y., 285.

Indeed, in England, by statute known as the Conveyancing Act of 1881 (44 and 45 Vict., c. 41, S. 6, Sub-s. 1), a conveyance is now admitted to include all ways and "other liberties, privileges, easements, rights and advantages whatsoever reputed to pertain to, or at the time of the conveyance enjoyed with, the land and any part thereof." In consequence of this enactment, even such general words as "with the appurtenances" are now admitted surplusage in a deed, and are rarely employed.

Our Supreme Court has, in the case of *Railway* v. *Wachter*, 70 O. S., 113, at 117, defined an easement as a right-of-way or "a servitude imposed as a burden upon the land." It would probably be more accurate and less confusing to apply the easement exclusively to the liberty or privilege which the owner of the parcel known as the dominant tenement has in the lands of another, the latter being known as the servient tenement, and to reserve the term "servitude" to apply to the right or privilege in the servient tenement which exists for the advantage or convenience of the owner of the dominant tenement. In a later case, our Supreme Court has defined an easement as a "right without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another for the benefit of the former." *Yeager* v. *Tuning*, 79 O. S., 121, 124.

It is apparent that in order to constitute an easement there must be two estates, one giving and the other receiving an advantage or benefit. So long as the estates belong to one owner, no easement can exist, for manifestly a person can not be said to have a privilege or benefit in favor of one piece of property owned by him in another piece of property which he likewise owns; and if the dominant and servient tenements at any time are united in a common ownership, any easement which may have previously existed is *ipso facto* extinguished. *Washburn on Easements*, 684.

In the case at bar it is not disputed that if the conveyance of June 9th, 1885, to plaintiff had been by deed, the easement for which plaintiff contends would have been created in its favor,

and that the property owned by defendants would have been burdened with a servitude in favor of plaintiff's property. But defendants claim that a mortgage in Ohio is merely a security for a debt, and therefore has not the effect of creating an easement which would have been created by a deed. This necessitates a consideration of the legal effect of a mortgage in this state.

At common law a mortgage was regarded as a conveyance of the absolute legal title to the estate designated therein. A mortgagee became the owner of the premises, though his title might be subsequently defeated by the performance of certain conditions. These conditions were usually designated as *conditions subsequent* although, in our opinion, they are in reality *conditions precedent* to the revesting of title in the mortgagor. The mortgagee was actually entitled to immediate possession of the premises, and might treat the mortgagor as a trespasser and maintain ejectment proceedings against him even before default, unless he had agreed that the latter might remain in possession. Even if the mortgagor performed his part of the contract and paid the debt, the legal title was not thus restored to him, but a re-conveyance by the mortgagee was necessary to accomplish this end. If there was a breach of the conditions of the mortgage, the title of the mortgagee became absolute and indefeasible and the mortgagor's interest in the property thereupon terminated.

In equity, however, the rigid rule of the common law was much mollified. A mortgagor was given the privilege of redeeming the property after breach of the condition, this privilege being based, in all probability, upon the equitable theory of accident, and the maxim that equity looks rather to the intent than the form and will relieve against legal penalties and forfeitures when adequate compensation can be made by the award of money (*Pomeroy's Equity Jurisprudence*, Section 1180). The right thus given a mortgagor was called the equity of redemption. This designation came then to be applied to the interest which the mortgagor had retained after he had conveyed the legal title to the mortgagee. This equitable right was a distinct and separable interest, which might be granted, mortgaged, devised, entailed or taken in execution, and in which an estate in dower or

by the curtesy might be claimed; and the mortgage itself came to be regarded as a mere lien or security for a debt to which it was only an accessory.

It is significant, however, that there was no encroachment by either jurisdiction upon the other. The equitable and legal systems grew up side by side and were regarded as mutually consistent. Courts of equity did not attempt to control the law courts or to question the doctrines which they enunciated; but on the contrary they recognized the force and validity of the legal rule by requiring a formal re-conveyance by the mortgagee of an estate redeemed after forfeiture (*Coote on Mortgages,* 14; *Barrett v. Hinckley,* 124 Ill., 32). A mortgagee might avail himself of both legal and equitable remedies. He might sue at law for the debt or in ejectment or resort to the equitable remedy of foreclosure. Or he might first acquire possession by a legal recovery in ejectment and then institute suit in equity to terminate the mortgagor's right to redeem by a decree for foreclosure.

In this country there has been no absolute uniformity in the views which have been taken of the respective rights of the mortgagor and the mortgagee. In many of the states the common law doctrine of mortgages has been entirely abrogated, and has given place to a purely equitable theory according to which a mortgage is a mere lien or security for a debt, creating no title or estate in favor of the mortgagee and giving him no right or claim to the possession of the property. This doctrine prevails in California (*Booker v. Castillo,* 154 Cal., 672); in Colorado (*Railway Company v. Beshoar,* 8 Colo., 32); in Delaware (*Malsberger v. Parsons,* 75 Atl., 698); in Georgia (*Phillips v. Bond,* 132 Ga., 413); in Indiana (*Baldwin v. Maroney,* 173 Ind., 574); in Iowa (*Whitley v. Barnett,* 151 Ia., 487); in Kansas (*Beckman v. Sikes,* 35 Kansas, 120); in Michigan (*Dawson v. Peter,* 119 Mich., 274); in Minnesota (*Geib v. Reynolds,* 35 Minn., 331); in Montana (*Mueller v. Renkes,* 31 Mont., 100); in Nebraska (*Clark v. Trust Company,* 59 Neb., 53); in Nevada (*Orr v. Ulyatt,* 23 Nev., 134); in New Mexico (*Alexander v. Cleland,* 13 N. M., 524); in New York (*Barson v. Mulligan,* 191 N. Y., 306); in North Dakota (*McClory v. Ricks,* 11 N. D.,

38); in Oklahoma (*Yingling* v. *Redwine*, 12 Okla., 64); in Oregon (*Bailey* v. *Fraser*, 124 Pac., 643); in South Carolina (*Wallace* v. *Langston*, 52 S. C., 133); in South Dakota (*Farr* v. *Semmler*, 24 S. D., 290); in Texas (*Ferguson* v. *Dickinson*, 138 S. W., 221); in Utah (*Azzalia* v. *St. Claire*, 23 Utah, 401); in Virginia (*Bank* v. *Beard*, 100 Va., 687); in Washington (*Norfar* v. *Busby*, 19 Wash., 450); and in Wisconsin (134 Wis., 191).

However, there is another large class of cases in which the common law doctrine of mortgages prevails, although it is more or less extensively modified by equitable principles. Among these states are the following: Alabama (*Cotton* v. *Carlisle*, 85 Ala., 175); Arkansas (*Whittington* v. *Flint*, 43 Ark., 504); Connecticut (*Cook* v. *Bartholomew*, 60 Conn., 24); Illinois (*Ladd* v. *Ladd*, 252 Ill., 43); Maine (*Allen Co.* v. *Emmerton*, 108 Me., 221); Maryland (*Chilton* v. *Green*, 65 Md., 272); Massachusetts (*Kinney* v. *Treasurer*, 207 Mass., 363); Mississippi (*Buck* v. *Payne*, 52 Miss., 271); Missouri (*Leather Co.* v. *Insurance Co.*, 131 Mo. App., 701); New Hampshire (*Morse* v. *Whitcher*, 64 N. H., 591); New Jersey (*Devlin* v. *Collier*, 53 N. J. L., 422); North Carolina (*Cauley* v. *Sutton*, 150 N. C., 327); Pennsylvania (*McIntyre* v. *Velte*, 153 Pa. St., 350); Rhode Island (*Reynolds* v. *Hennessy*, 15 R. I., 215); Tennessee (*Bank* v. *Ewing*, 12 Lea., 598); Vermont (*Brunswick* v. *Herrick*, 63 Vt., 286). In Virginia and West Virginia this doctrine has always prevailed, but mortgages are being practically superseded by trust deeds.

Ohio follows the rule last mentioned. It is true that a mortgage is primarily a security for the payment of a debt or the performance of some other obligation, yet it is in many of its aspects and essentials a conveyance of an estate. In other words, it is something more than a mere lien. It passes the property conditionally to the mortgagee, giving to him the benefit of all the doctrines applicable to *bona fide* purchasers for value (*Harkrader* v. *Leiby*, 4 O. S., 602). It is, for example, construed as a conveyance within the statute of frauds and perjuries (*Webb* v. *Roff*, 9 O S., 430). It is construed in the same manner as a deed with reference to the extent of the estate which is created, and in the interpretation of its covenants and clauses (*Brown*

v. *Bank*, 44 O. S., 269). It creates an interest in the property itself, as distinguished from a mere lien upon the property, which interest is insurable. *McDonald* v. *Black*, 20 Ohio, 185.

As early as the case of *Raguet* v. *Roll*, 7 Ohio (pt. 2), 70, the question of the interpretation of a mortgage was presented to the Supreme Court of this state. The court said (p. 72):

"If the deed in this instance were an absolute conveyance, there could be no doubt then of the right of the plaintiff to recover. The real difficulty arises out of the double character of the instrument, which is evidence of a debt hereafter to be paid, and at the same time operates an actual transfer of the land to the mortgagee. Although a strong disposition existed once to treat a mortgage as a mere chose in action, and although individual judges were heard to declare that the money was the principal, and the land only the incident, and that whatever would carry the money would convey the land, yet such is not now supposed to be the law. A mortgage is in reality a conditional fee, which is as large an estate as a fee simple, though it may not be so durable. * * * A mortgage is in reality an actual payment of the debt, as well as an actual transfer of the land, although, in consequence of the land being sometimes greater in value than the debt, *an equity* was supposed to arise in favor of the mortgagor which was called his right of redemption, and which is now extended to every case of a conveyance by way of mortgage."

In *Miner* v. *Wallace*, 10 Ohio, 404, it is said by the court (p. 405):

"The mortgagee, as between the parties to the mortgage, and in regard to all purposes contributing to the collection of his debts, is a purchaser and entitled to all his privileges of protection."

In *Choteau* v. *Thompson*, 2 O. S., 114, the Supreme Court said (p. 122):

"A mortgage is a grant of an estate upon a condition. This distinguishes it from those simple pledges which pass no title but only create a lien. * * * A conveyance of an estate seems indispensable to create a mortgage."

In *Holmes* v. *Gardner*, 50 O. S., 167, the court says (p. 176):

"While the mortgage itself is certainly a lien for a debt, it is something more. In *United States* v. *Fisher*, 2 Cranch., 358, the court declared, 'that a mortgage is a conveyance of property, and passes it conditionally to the mortgagee.' And in *Conrad* v. *Insurance Co.*, 1 Pet., 441, a mortgage is declared to be a 'transfer of the property itself as a security for the debt.'"

In the case of *Campbell* v. *Sidwell*, 61 O. S., 179, the court says (p. 187):

"The claim of the judgment creditor is fixed by statute and is purely legal. That of the mortgagee is also statutory, but it rests, also, on equitable considerations, inasmuch as he has parted with his money upon the faith of a condition, as to title and possession, existing by reason of the voluntary act of the vendor. He has not only a lien upon the property, but has a conveyance of the estate by way of pledge, and is in the position of a *bona fide* purchaser with a right to use the legal title for the purpose of making his security effectual."

The last citation indicates a matter of considerable importance in determining the question presented for our consideration. The conveyance is manifestly made for the purpose of securing against loss one who has advanced money upon the faith of the conveyance. The mortgagor is supposed to have selected the terms employed in the conveyance, so that it is construed most strongly against him, and in such manner as to make it adequate for the purpose for which it is intended (*Jones on Mortgages,* Section 101; *Railway Co.* v. *Trust Co.*, 2 N.P.[N.S.], 529; *Tuttle* v. *Burgett,* 53 O. S., 498). It is therefore presumed that one who executes a mortgage transfers not merely the naked title to the *res* itself, but also all the incidents thereto which are reasonably necessary to make the ownership effective and to make the security adequate.

Thus, it has been held that a mortgage of a lot also covers the easement which it has in an adjoining lot created by a party wall agreement. *Maupai* v. *Jackson*, 118 N. Y. Supp., 513. It has also been held that a mortgage of a lot "together with all appurtenances" covers an easement in an irregular strip of land used as a means of ingress and egress in connection with another

lot, both lots and the strip having previously been owned in common.   *Putnam* v. *Putnam*, 78 N. Y. Supp., 987.

In the case of *Bank* v. *Insurance Co.*, 83 Minn., 377, it was held that the foreclosure of a real estate mortgage thus transfers to the purchaser at the sale all such rights, privileges, and easements as are appurtenant and necessary to the enjoyment of the mortgaged property, including an easement in the adjoining land on which the building extended and rested, to the extent necessary to support the same.   The court says (p. 382):

"Every right or interest held by the mortgagor in or to the mortgaged property, together with all subsequently acquired rights, easements and privileges which are necessary and essential to the enjoyment of the property, passes with the mortgage.
*   *   *   Under this rule it is held that an easement passes with the land to which it is appurtenant without express reference to it in a deed of conveyance."

And the court further says:

"There can be no difference between the rights acquired in a deed and those granted and secured under the mortgage.   While the mortgage is but a conditional sale and transfer of the incumbered estate, the sale becomes absolute and all rights of the mortgagor pass to the mortgagee on foreclosure."

The case of *Exchange Bank* v. *Cunningham*, 46 O. S., 575, is one of the leading cases in this country.   The arrangement of the pieces of property involved was similar to that in the case at bar.   The dominant tenement was accessible only by means of a stairway running through the servient tenement, both having been constructed by one owner who subsequently sold the dominant tenement to one of the parties to the case.   It was held that by the conveyance the right to the use of the stairway passed to the purchaser as an easement appurtenant to the premises conveyed.   The court says (p. 587):

"It is a well-settled doctrine of the law of easements that where there are no restrictive words in the grant, the conveyance of the land, will pass to the grantee, all those apparent and continuous easements which have been used, and are at the time of the grant used by the owner of the entirety for the benefit of the

parcel granted; and also, all that appear to belong to it, as between it, and the property which the vender retains; and hence when the owner of an entire estate makes one part of it visibly dependent for the means of access, upon another, and creates a way for its benefit over the other, and then grants the dependent part, the other part becomes subservient thereto, and the way constitutes an easement appurtenant to the estate granted, and passes to the grantee as accessorial to the beneficial use and enjoyment of the land.''

The case of *Baker* v. *Rice*, 56 O. S., 463, is also often cited. The syllabus in this case reads as follows:

'':Where one who is the owner of a body of land, during his occupancy of it, constructs a private way over one part of it to another as a means of egress and ingress to the latter from his home and also to the public highway, which way is apparent, continually used, and reasonably necessary to the use and enjoyment of the land to which the way is constructed, and, also, adds materially to its value, conveys by deeds of the same date, the part with the way to it to one of his children and the part with the way over it to another one of them, each takes his part to be enjoyed with reference to the way as the same existed at the time of the division—the one with an implied grant of the way to it, and the other subject to such way as an easement therein.''

But it is contended on behalf of defendant that although a mortgage will cover an actually existing easement, where such easement has already been attached to property, it will not create an easement where the mortgaged premises and the servient tenement have both been at all times the property of the mortgagor. We can not, however, agree with defendants in this contention. It makes no difference, in our opinion, in what manner the severance is effected. Thus, upon partition of real estate between heirs, each heir takes his share of land subject to any apparent, permanent, continuous and reasonably necessary *quasi* easement which existed thereon for the benefit of another part of such real estate, at the death of the ancestor. *Johnson* v. *Gould,* 60 W. Va., 84. In this case the court quotes with approval from *Elliott* v. *Rhett,* 5 Richards (S. C.), 405, as follows:

''The grant of continuous and apparent easements is implied on severance of heritage, where, though having no legal existence

as easements, they have in fact been used by the owner during the unity of the heritage or where they are necesssary to the full enjoyment of the several portions of the heritage.''

And in the case of *Havens* v. *Klein,* 51 How., Pr., 82, the court carefully considers and directly determines the very question presented in the case at bar. In that case a common owner of two tenements, the windows of one of which overlooked the yard of the other and received light and air therefrom, its shutters swinging out over such yard, and its fire escapes overhanging the yard through which access to them was obtainable, mortgaged both tenements. The mortgages contained the usual grant with all ''rights, privileges, and appurtenances thereunto belonging.'' Both mortgages were foreclosed. The court held that the easement being apparent, the grantee of the servient tenement, which was the one later mortgaged, is deemed to have actual notice of the easement and takes his title subject thereto and it is immatrial in such case whether the severance be by deed or mortgage. The court quotes with approval from the opinion of. Seldon, J., in *Lampman* v. *Mills,* 21 N. Y., 511:

''If both proprietors obtain their title from a common source * * * the windows can not be obstructed; and the reason is that the relative qualities of the two tenements must be considered as fixed at the time of their severance. Each retains as between it and the other the properties thus visibly attached to it and neither party has the right afterwards to change them.''

The case of *Burnett* v. *Helker,* 15 O. D. Rep., 600, decided by this court in general term, is similar in some respects to the case at bar. The owner of a tract of land constructed adjoining houses with toilet facilities connected with one of the houses which were used by the tenants of both houses indiscriminately. He then conveyed the house without toilet facilities to defendant, and then sought to prevent the tenants of the house so conveyed from using these common toilets. The court said (p. 601):

''The conclusion seems plain that the right to use the closet in question passed with the conveyance of the property, for the convenience of the occupants of which it was constructed, in

connection with which it had been and still is used, and to which it was and is a necessary appurtenance.''

In the case of *Insurance Company* v. *Patterson,* 103 Ind., 582, it was held that where the owner of an estate imposes upon one part of it an apparently permanent and obvious servitude in favor of another, and at the time of serverance of ownership such servitude is in use and is reasonably necessary for the fair enjoyment of the other, then whether the severance is by voluntary alienation or by judicial proceedings, the use is continued by operation of law. In that case the owner of the house and lot placed a mortgage thereon, and after the foreclosure of the mortgage it appeared that the house projected a few feet over the adjoining lot belong to the same owner. The court, in deciding that the right to the support on such lot passed with the grant said (p. 586):

''In such case, the law implies that with the grant of the one (part of an estate) an easement is also granted or reserved, as the case may be, in the other (part), subjecting it to the burden of all such visible incidents and uses as are reasonably necessary to the enjoyment of the dominant heritage in substantially the same condition in which it appeared and was used when the grant was made.''

And again (pages 587, 588):

''The application of the rule must depend upon the nature, arrangement and use of the estate, the relation of the parts to each other, and the existing degree of necessity for giving such construction to the grant as will give effect to what may be supposed to have been, considering the manner of the use, the reasonable intendment of the parties; the underlying principle in such cases being that, included in the grant of the principal, are all such privileges and appurtenances as are obviously incident and reasonably necessary to the fair enjoyment of the thing granted, substantially in the condition in which it is enjoyed by the grantor, unless the contrary is provided. * * *

''Where such arrangement is visible and apparently designed to be permanent, and is valuable and reasonably necessary to the enjoyment of the parcel granted, the parties will be presumed to have contracted with reference to the condition of the property

at the time of the grant and 'neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts.' "

Defendants suggest that the easement in this case is not one of strict necessity, but that it is possible for plaintiff to construct, at a comparatively small cost, an independent means of ingress and egress, and separate toilets and water closets for the premises now owned by it. This, of course, directly raises the question of the degree of necessity essential to the acquisition of a way. This has been incidentally touched upon in some of the cases heretofore referred to, but we shall proceed to discuss the question at greater length.

It may first be pointed out that there is a difference where the way is created by grant or merely reserved by the grantor in the property retained by him. In the latter case, it will not be presumed that the grantor intends to derogate from his grant, so that to warrant the inference of reservation the way must be one of strict necessity (*Meredith* v. *Frank,* 56 O. S., 479; *Keyler* v. *Eustis,* 13 N.P.[N.S.], 601). In the former case, however, the rule is somewhat different. The degree of necessity which must exist in the case of a grant to give rise to an easement by implication is such merely as renders the easement reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. Thus in the case of *Mosher* v. *Hibbs,* 1 C.C.(N.S.), 49 (24 O. C. D., 375, 380), the court indicates that it is its opinion that an easement will be granted by implication where it is apparent, continually used and reasonably necessary to the use and enjoyment of the lands to which the way is constructed and also adds materially to its value. In the case of *Meredith* v. *Frank, supra,* the court says (p. 488):

"The reservation of a way by the grantor in apparent derogation of his deed and its covenants, stands upon a much narrower ground than does the case of a grant. In the latter case    *    *    *    a way passes by implication where it has been attached to the part granted by the grantor and is apparent and necessary to the reasonable enjoyment of the premises granted. It is not necessarily a way of strict necessity."

In the case of *Insurance Company* v. *Patterson, supra,* the court said (p. 589):

"The degree of necessity is to be determined rather by the permanency, apparent purpose, and adaptability of the disposition made by the owner during the unity of title, than by considering whether a possible use can be made of the parcel granted, after a discontinuance of the right formerly exercised over the other.  .*   *   *

"The reasonable application of the doctrine, as we deduce it from the authorities, however, leads to the general conclusion that if the service imposed on one, during the unity of possession of two parcels of land, was of a character looking to permanency, and the discontinuance of such service would obviously involve an actual and substantial rearrangement of that part of the estate in whose favor the service was imposed, to the end that it might be as comfortably enjoyed as before, then such a degree of reasonable necessity would seem to exist as would raise an implication that the use was to be continued."

In this connection see also the case of *Kelly* v. *Deming,* 43 N. J. Equity, 62; *Miller* v. *Lapham,* 44 Vt., 416. Counsel for defendants refers to the case of *Fertilizing Company* v. *Railway Company,* 7 N. P., 245, 253. The opinion in that case, however, must be taken in connection with the facts of the case. Plaintiff had access to his land over another parcel of land belonging to himself. Although this mode of access was less convenient than the original way over defendant's land, the court held that the rights of the parties could not be determined by a mere balance of conveniences and judgment was entered for the defendant. Defendants suggest that plaintiff might make the property accessible directly from Edinboro Place by breaking through the front wall, continuing the hallway along the east side of No. 129 to the street, and constructing a stairway in the rear of the premises, where a coal cellar now exists, as well as a stairway and porch to the west of the building in an area way 4 ft. 11 in. in width; that toilet facilities may be constructed upon the east side of the same building, and that a separate water meter and connections may be put in. The exact cost of this change is not apparent, nor is it, in our view of the case, material, as it would undoubtedly involve considerable change, the necessity for which

could not at any time have been apparent to plaintiff. We might also suggest that from a sociological and sanitary point of view we can not bring ourselves to require the construction of hallways, stairways and toilets which would be without light or ventilation except such as might be furnished by vents leading through the roof of a six story building.

Defendants sole remaining contention is that plaintiff has failed to repair the passageways leading through the premises at No. 131, or pay to defendants the money expended for that purpose, and that it has failed to pay the entire cost of certain repairs to the plumbing which are said to have been rendered necessary by acts of plaintiff's tenants. We do not think this position well taken. The testimony does not indicate that the repairs to the passageways had been rendered absolutely necessary.

In the case of *Exchange Bank* v. *Cunningham, supra,* the court says (588-9):

"It is undoubtedly the rule that unless the owner of the servient estate is bound by covenant or prescription to repair, he is under no obligation to do so. The burden devolves upon the owner of the dominant estate of making whatever repairs are necessary for *his use of the easement*. It is said by a learned author that 'As a general proposition, whoever has an easement, like a right of way for instance; in or over another's premises, is the one to keep it in repair.' Washburn on Easements, 730. And by another, that 'Every grantee of a right of way, to be exercised and enjoyed over or through the land of the grantor must himself repair the way if he desires to have it repaired and kept in repair for his use, or if repairs are necessary to prevent the enjoyment of the right becoming an annoyance and nuisance to the owner of the servient tenement unless the grantor himself has expressly undertaken the performance of that duty.' *Addison on Torts,* 301-302."

As it does not appear that any demand for a contribution has ever been made of plaintiff, we do not think it just to permit defendants to make such repairs as they think necessary and then urge the payment therefor as a reason for forfeiting a ripened easement in their premises.

Accordingly a decree may be entered making permanent the temporary restraining order heretofore granted, forbidding defendants from interfering in any way with the use of the easements, privileges and appurtenances heretofore set out. It will be understood that this merely establishes the right of the tenants in plaintiff's property to make use of these easements, but does not give them the right permanently to occupy the porches and halls for the drying of clothes and other similar purposes.